Z:\LOK_data\868\013\Obj.MtAuthorizing.SDNY.wpd/TDB/lt

Hearing Date: June 3, 2009 at 10:00 a.m.
Objection Deadline: May 26, 2009 at 4:00 p.m.

BOGGS, AVELLINO, LACH & BOGGS, L.L.C.
7912 Bonhomme Ave., Ste. 400
St. Louis, Missouri 63105
Phone: (314)726-2310
Fax: (314) 726-2610
T. Darin Boggs (pro hac vice pending)
tboggs@balblawyers.com

Counsel for Dave Croft Motors, Inc.

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| CHRYSLER LLC, *et al.* | ) | |
| | ) | Case No.:   09-50002 |
| Debtors. | ) | (Jointly Administered) |
| | ) | Honorable Arthur J. Gonzalez |

## DAVE CROFT MOTORS, INC.'S, OBJECTION TO MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION FOR AN ORDER, PURSUANT TO SECTIONS 105, 365 AND 525 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6006,(A) AUTHORIZING THE REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH CERTAIN DOMESTIC DEALERS AND (B) GRANTING CERTAIN RELATED RELIEF

COMES NOW, Dave Croft Motors, Inc. ("Croft"), by and through its attorneys, T. Darin Boggs, and Boggs, Avellino, Lach & Boggs, L.L.C., and for its Objections to Debtor's Motion for an Order Authorizing the Rejection of Executory Contracts and Unexpired Leases with Certain Domestic Dealers, states as follows:

## BACKGROUND FACTS

1.      On April 30, 2009, Debtors, Chrysler LLC, *et al.* ("Chrysler"), filed a Chapter 11 Bankruptcy proceeding with the United States Bankruptcy Court for the Southern District of New York.

2.      On May 14, 2009, Chrysler filed a Motion for an Order Authorizing the Rejection of Executory Contracts and Unexpired Leases with Certain Domestic Dealers ("Motion") with the Court.

3.      In its Motion, Chrysler is requesting an Order from the Court authorizing Chrysler to reject certain dealer agreements or other contracts that Chrysler has with certain specified automobile dealers.

4.      Chrysler's Motion identifies Croft as one of the dealers whose franchise agreements ("agreements") that Chrysler is seeking to reject.

5.      However, on September 17, 2008, Croft filed its own voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Illinois, Case #08-32084.

6.      As of the date of Croft's bankruptcy filing, the agreements between Chrysler and Croft were fully in effect, and both parties continue to be bound by those agreements.

7.      Croft filed its Disclosure Statement and Plan of Reorganization on February 17, 2009.

8.      Chrysler never objected to Croft's Disclosure Statement or Plan of Reorganization.

-2-

9.     Croft's Chapter 11 Bankruptcy case is still active and pending in the Southern District of Illinois.

10.    Croft is a "full line" Dealer selling all three of Chrysler's brands, Chrysler, Jeep, and Dodge.

## ARGUMENT

11.    Any clauses contained in the dealer agreements between Chrysler and Croft which purport to terminate the agreements automatically upon the filing of bankruptcy by Croft are invalid. 11 U.S.C. §365(e), In re Yates Development, Inc., 241 B.R. 247 (Bkrtcy. M.D. Fla., 1999).

12.    Because the dealer agreements between Chrysler and Croft were in effect at the time of Croft's bankruptcy filing, the agreements, and Croft's interest in the agreements, became property of Croft's bankruptcy estate in accordance with 11 U.S.C. §541. In re Krystal Cadillac Oldsmobile GMC Truck, Inc., 142 F.3d 631 (3rd Cir. 1998), In re The Motorcycle Excellence Group, 365 B.R. 370 (Bkrtcy. E.D.N.Y., 2006).

13.    Pursuant to 11 U.S.C. §362(a), Croft's filing of bankruptcy operated as an automatic stay of any action to obtain property from Croft's bankruptcy estate.

14.    Chrysler's Motion for an Order Authorizing the Rejection of the Dealer Agreements seeks to obtain property from Croft's bankruptcy estate. Therefore, at a minimum, Chrysler must first seek relief from the automatic stay in Croft's Bankruptcy case before it may be allowed to seek rejection of Croft's agreements.

15. Further, Chrysler has not adequately demonstrated that rejecting the dealer agreements between Chrysler and Croft would benefit Chrysler's bankruptcy estate.

16. Chrysler has not offered any concrete evidence to show how rejection of its agreements with Croft are burdensome to Chrysler's estate or cause any financial detriment to Chrysler. In contrast, the agreements provide Chrysler with additional income from the cars it sells to Croft, while Croft is required to bear the financial responsibility for expenses related to Croft's employees, advertising costs, and other costs necessary to operate its business.

17. Chrysler is seeking to reject its agreements with Croft on the basis of mere conclusory allegations that rejection is an exercise of sound business judgment by Chrysler. However, Chrysler should, at a minimum, be required to provide specific evidence demonstrating how rejection of the agreements would provide any significant benefit to Chrysler in its attempt to reorganize. In the absence of such evidence, especially considering the substantial impact that rejection would have on Croft, Chrysler should be prevented from obtaining the relief it requests.

18. Contrary to Chrysler's vague argument that it is burdened by the agreements it seeks to reject, Chrysler actually receives a benefit from such arrangements. In fact, the purchase of Chrysler's vehicles by dealers is a primary source of revenue for Chrysler.

19. Further, it has been noted that the distribution channels provided by Chrysler's Dealer Newtork operate at "virtually no cost to the manufacturer." Casesa

-4-

Shapiro Group, <u>The Franchised Automobile Dealer</u>, at 5 (Nov. 26, 2008) (attached to Doc. No. 933).

20. Essentially, Chrysler bears very little financial burden, if any at all, as a result of the dealer agreements between Chrysler and Croft, while Croft bears the significant expenses and risks associated with operating its business and selling the cars it purchases from Chrysler.

21. In addition, if Chrysler were allowed to reject the dealer agreements, the burden imposed on Croft would significantly outweigh the relatively small benefit that Chrysler would allegedly receive. Chrysler alleges that rejection of the dealer agreements is necessary because a larger dealer network increases costs of processes, procedures, and oversight of the network. However, Chrysler does not offer any specific evidence to show the amount or the impact of these alleged additional expenses. Meanwhile, allowing rejection of the dealer agreements between Croft and Chrysler would substantially impair, and indeed almost certainly eliminate, Croft's ability to successfully reorganize its business under its own Chapter 11 proceedings.

22. Croft has invested significant resources and has spent countless hours attempting to successfully reorganize its business through its own Chapter 11 proceedings. Allowing Chrysler to reject the dealer agreements between Chrysler and Croft, while providing only a few weeks' notice to Croft of the rejection, would greatly hinder Croft's reorganization efforts and will effectively force Croft to close its doors. Therefore, rejection

-5-

would significantly harm not only Croft but also all of Croft's creditors, while providing little to no financial benefit to Chrysler.

23.     Rejection should not be allowed when, at best, it is unclear whether Chrysler or Chrysler's creditors would benefit from rejection of the agreements between Croft and Chrysler, and when such rejection would so clearly and significantly harm Croft. In re Balco Equities Ltd, Inc., 323 B.R. 85 (Bkrtcy. S.D.N.Y. 2005) ("court must determine that rejection will likely benefit the estate"); See also In re Midwest Polychem, Ltd., 61 B.R. 559, 562 (Bkrtcy. N.D. Ill. 1986) ("court may withhold approval where the party whose contract stands to be rejected will likely be damaged disproportionately to any potential benefit to be derived by the general unsecured creditors"). Such disproportionate damages that would be incurred by Croft and Chrysler provides a clear ground for denying Chrysler's request for rejection. In re Monarch Tool & Mfg. Co., 114 B.R. 134, 137 (Bkrtcy. S.D. Ohio 1990).

24.     At the very least, Croft should be granted additional time before any rejection takes place, so that Croft may attempt to mitigate the damages that would be caused by rejection and hopefully devise new methods for successfully reorganizing its own company.

25.     Chrysler would not incur any harm by extending the time frame of any potential rejection. Virtually all of the expenses that would be incurred under the dealer agreements between the present time and the time of any future rejection would be the responsibility of Croft, not Chrysler. Croft is required to pay for the inventory it receives

09-50002-smb Doc 1443 Filed 05/21/09 Entered 05/21/09 11:37:06 Main Document Pg 7 of 15

from Chrysler, as well as all costs relating to its employees, its building and land expenses, its advertising expenses, and all other costs associated with operating a car dealership.

26.     Croft, meanwhile, would receive the substantial benefit of being able to sell more of its inventory and provide repair service to other Chrysler vehicles. This added income from operations could potentially determine whether Croft is successful in reorganizing its business through its own Chapter 11 Plan.

27.     In addition, despite Chrysler's argument to the contrary, the applicable Dealer Laws in Illinois are not preempted by the Bankruptcy Code. See <u>Midlantic National Bank v. New Jersey Department of Environmental Protection</u>, 474 U.S. 494, 505 (1986) (28 U.S.C. §959 provides additional evidence Congress did not intend for the Bankruptcy Code to pre-empt all state laws and commands trustee to act according to the requirements of valid state laws. As such, Chrysler's attempt to reject its agreements with Croft is subject to those state laws.

28.     The applicable Illinois statutes state that it is an unfair practice "to cancel or terminate the franchise or selling agreements of a motor vehicle dealer without good cause and without giving notice." 815 ILCS 710/4. The statute further specifies that if a manufacturer wishes to terminate a franchise agreement, it must provide a minimum of sixty (60) days notice to the dealer before taking such action. Id.

29.     Despite the clear language of this statute and its notice requirement, Chrysler is attempting to reject and terminate its agreements with Croft while giving Croft the benefit of only a few weeks' notice of such rejection.

-7-

30.    While Croft, for obvious reasons, does not want the agreements to be terminated at all, it should at least be given the protection of the Illinois Dealer Statutes, and the statutes' notice requirements, in order to best prepare itself for such termination by selling off as much of its current inventory as possible.  The extra time allowed by enforcing the notice requirement would also provide Croft a greater opportunity to either establish a viable plan for reorganizing its business as a used car dealership, or to reach an agreement to sell vehicles produced by another auto manufacturer.

31.    Allowing Chrysler to reject its agreements with Croft in the time frame requested by Chrysler denies Croft the protection of the applicable Dealer Statutes and will, in all likelihood, produce the harsh result of forcing Croft to close its business, to the detriment of Croft, its employees and their families, its customers, and its creditors. Meanwhile, the benefit received by Chrysler, if any, would be minimal.  This type of result is clearly against the public policy behind both the Illinois Dealer Laws and the Bankruptcy Code, which was meant to minimize fiscal chaos and disruption, not create it.  In re Friarton Estates Corp., 65 B.R. 586, 594 (Bkrtcy. S.D.N.Y. 1986).

## CONCLUSION

32.    Chrysler should be denied its request to reject the dealer agreements between Chrysler and Croft because Chrysler has not shown that rejection of the agreements would be beneficial to its estate.

33.    The Dealer Agreements between Chrysler and Croft became assets of Croft's bankruptcy estate on the date that Croft filed its Bankruptcy Petition (September 17, 2009),

and therefore, Chrysler is required to seek relief from the automatic stay in Croft's Bankruptcy Case before attempting to obtain possession of Croft's property.

34. Even if this Court should determine that rejection of the dealer agreements is appropriate, Chrysler should still be prohibited from rejecting its agreements with Croft unless and until it receives relief from the automatic stay that applies to Croft's bankruptcy estate, and/or unless it abides by the notice requirements established in the applicable Illinois Dealer Statutes.

WHEREFORE, Dave Croft Motors, Inc., respectfully requests that this Court enter an Order denying Debtor's Motion for an Order Authorizing the Rejection of Executory and Unexpired Leases with Certain Domestic Dealers as to Croft, or, in the alternative, Dave Croft Motors, Inc., respectfully requests that this Court enter an Order requiring Chrysler to obtain relief from the automatic stay applicable to Croft's bankruptcy estate before Chrysler is allowed to attempted to reject the executory contracts between Chrysler and Croft.

Respectfully Submitted,

By:_____

T. Darin Boggs, #2662 (pro hac
vice pending)
BOGGS,  AVELLINO,  LACH  &
BOGGS, L.L.C.
7912 Bonhomme Avenue, Suite
400
St. Louis, MO 63105
(314) 726-2310 PHONE
(314) 726-2360 FAX
E-Mail: tboggs@balblawyers.com
**Counsel to Dave Croft
Motors, Inc.**

-10-

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing was electronically served and forwarded, via the United States Postal Service, first-class mail, postage prepaid, this 20th day of May, 2009, to:

### Debtors

Chrysler LLC
Attn: Holly E. Leese, Esq.
Senior Vice President, General Counsel and Secretary
1000 Chrysler Drive
CIMS #485-14-36
Auburn Hills, Michigan 48326
E-mail: ChryslerOGC@chrysler.com

### Counsel to the Debtors

Corinne Ball, Esq.
Veerle Roovers, Esq.
JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-393
Facsimile: (212) 755-7306
E-mail: cball@jonesday.com
E-mail: vroovers@jonesday.com

Jeffery B. Ellman, Esq.
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA 30309
Telephone: (404) 521-3939
Facsimile: (404) 581-8330
E-mail: jbellman@jonesday.com

**Conflicts Counsel to the Debtors**

Albert Togut, Esq.
TOGUT SEGAL & SEGAL, LLP
One Penn Plaza
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
E-mail: altogut@teamtogut.com

**Noticing Agent**

Eqip Bankruptcy Solutions, LLC
Attn: Chrysler Claims Department
757 Third Avenue
New York, New York 10017
Facsimile: (646) 282-2501
E-mail: chrysler@eqipsystems.com

**Counsel to Official Committee of Unsecured Creditors**

Thomas Moers Mayer, Esq.
Kenneth H. Eckstein, Esq.
Robert T. Schmidt, Esq.
Adam C. Rogoff, Esq.
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
E-mail: tmayer@kramerlevin.com
E-mail: keckstain@kramerlevin.com
E-mail: rschmit@kramerlevin.com
E-mail: arogoff@kramerlevin.com

**Counsel to the Administrative Agent for the Debtors' Prepetition Senior Secured Lenders**

Peter Pantaleo, Esq.
David Eisenberg, Esq.
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
E-mail: ppantaleo@stblaw.com
E-mail: deisenberg@stblaw.com

**Cerberus**

Seth Gardner
CERBERUS CAPITAL MANAGEMENT, L.P.
299 Park Avenue
New York, New York 10171
Telephone: (212) 891-2100
Facsimile: (212) 891-5212
E-mail: sgardner@cerberuscapital.com

**Counsel to the United States Department of the Treasury**

John J. Rapisardi, Esq.
CADWALADER, WICHERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
E-mail: john.rapisardi@cwt.com

**Counsel to the United States**

Jeannette Vargas, Esq.
Tara M. La Morte, Esq.
Assistant United States Attorneys
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone (212) 637-2678/2730
Facsimile: (212) 637-2702-2730
E-mail: jeannette.vargas@usdoj.gov
E-mail: tara.lamorte2@usdoj.gov

J. Christopher Kohn, Esq.
Tracy J. Whitaker, Esq.
James G. Bruen, Esq.
Matthew J. Troy, Esq.
John T. Stemplewicz, Esq.
Attorneys, Civil Division, US Department of Justice
P.O. Box 875, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 514-9038/307-1104
Facsimile: (202) 514-9163
E-mail: matthew.troy@usdoj.gov
E-mail: john.stemplewicz@usdoj.gov

The undersigned hereby certifies that a true and correct copy of the above and foregoing was forwarded, via the United States Postal Service, first-class mail, postage prepaid, this 20th day of May, 2009, to:

**Office of the United States Trustee**

Office of the United States Truestee, Southern District of New York
Attn: Brian S. Masumoto, Esq.
33 Whitehall Street, 21st Floor
New York, New York 10004
Telephone: (212) 510-0500
Facsimile: (212) 668-2255

-14-

**Counsel to the Debotrs**

David G. Heiman
JONES DAY
North Point
901 Lakeside Avenu
Cleveland, OH 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212

-15-