NEDELMAN GLOETZNER, PLLC
28580 Orchard Lake Road, Suite 140
Farmington Hills, Michigan 48334
Phone: (248) 855-8888
Fax: (248) 538-4556
Michael A. Nedelman
mnedelman@nglegal.com

THAV GROSS STEINWAY & BENNETT
30150 Telegraph Road, Suite 444
Bingham Farms, Michigan 48025
Phone: (248) 645-1700
Fax: (248) 645-8205
David E. Einstandig (pro hac vice pending)
deinstandig@thavgross.com

Counsel for Livonia Chrysler Jeep, Inc.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————————————————X
                                              :
In re:                                        :        Chapter 11
                                              :
CHRYSLER LLC, et al.,                         :        Case No.: 09-500002 (AJG)
                                              :
        Debtors.                              :        (Jointly Administered)
———————————————————————X

INITIAL OBJECTIONS OF LIVONIA CHRYSLER JEEP, INC. TO MOTION OF THE
DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER, PURSUANT TO SECTION
105, 365 AND 525 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6006, (A)
AUTHORIZING THE REJECTION OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES WITH CERTAIN DOMESTIC DEALERS
AND (B) GRANTING CERTAIN RELATED RELIEF

TO THE HONORABLE ARTHUR J. GONZALEZ
UNITED STATES BANKRUPTCY JUDGE

        Livonia Chrysler Jeep, Inc., through its attorneys, submits the following Initial

Objections to the Motion (Docket no. 780) of the Debtors and Debtors in Possession for an

Order, pursuant to Sections 105, 365 and 525 of the Bankruptcy Code and Bankruptcy Rule 6006, (A) Authorizing the rejection executory contracts and expired leases (B) and Granting Certain Related Relief:

<u>PRELIMINARY STATEMENT</u>

Rejection of the Dealer Agreement and related documents (as defined in the Debtors' Motion) between the Debtors and Livonia Chrysler Jeep, Inc. ("Livonia Chrysler") is completely unjustified in law or in fact. Livonia Chrysler – the only female-owned Chrysler dealership in the Detroit Metropolitan area - has consistently been ranked by Chrysler, under every standard used, as one of the top dealers in the nation, achieving high marks in both customer satisfaction (Chrysler's "CSI" rankings) and sales satisfaction index (Chrysler's "SSI" rankings). There is <u>no</u> objective standard that could possibly have been employed by the Debtors (and the Debtors fail to suggest that any objective standard was used) – if the goal was to keep the best dealers and have "New Chrysler" be left with a stronger dealer network – that could possibly have resulted in a good faith, reasoned determination by the Debtors that it is in the best interests of the estates to breach the Dealer Agreement with Livonia Chrysler, and lose a valuable sales organization dedicated to the sale and service of Chrysler vehicles.

The absence of good faith, and the absence of a reasoned determination that would even approach one protected by the "business judgment rule," is perhaps best evidenced by the decision to sacrifice Livonia Chrysler while preserving dealer relationships with competitors of Livonia Chrysler, whose competitors' performance is <u>not</u> greater than that of Livonia Chrysler. The decision to breach the contractual relationship with Livonia Chrysler, through "rejection" of the Dealer Agreement under the guise of the exercise of the "business judgment rule," is instead

an effort of local Chrysler executives to preserve their business and personal relationships[1] with those dealers – and in particular Snethkamp Chrysler - who fit within the "good old boy" category at the expense of Livonia Chrysler and its owner, Colleen McDonald, who admittedly do not.

Attempting to use the "business judgment rule" as both a weapon and a shield, the Debtors claim (without support) that "rationalization" (a fictional term of art advanced by the Debtors, in an effort to avoid discussion of the real issues - "breach of contract" and "gender discrimination") of the dealer network, to mimic the "throughput" (another contrived term meaning nothing more than the average annual sales per dealership) of Japanese-based automakers and dealerships that the Debtors apparently wish to emulate (without any basis to believe that such "throughput" would be advantageous or beneficial to Chrysler), is in the best interests of the estates.  The Debtors, while asserting that "Project Genesis" included a review and analysis of numerous performance and planning factors, fail to affirmatively aver that in fact those "metrics" were used in making any judgment, let alone a "reasoned judgment," that the Dealer Agreement with Livonia Chrysler should be rejected. Given the accolades received by Livonia Chrysler, it is <u>impossible</u> that the Debtors could in good faith or in the exercise of their business judgment have concluded that Livonia Chrysler "lack[s] the operational, market, facility and linemake characteristics necessary to best contribute to the ongoing dealer network under current or future ownership," as alleged at Motion ¶40.

It is beyond reasonable belief that any reasonable and consistently applied selection criteria could have resulted in a decision to "reject" the Dealer Agreement with Livonia Chrysler.

---

[1] Upon information and belief, the head of Chrysler's Great Lakes Business Center, the business area that encompasses Livonia Chrysler, was a guest of the owner of Snethkamp Chrysler at a recent private birthday party for the owner, and frequently socializes with that owner. That dealership was, despite an inferior "scorecard," selected as the dealership to remain while the Debtors have sought to close Livonia Chrysler.

Livonia Chrysler – aside from the high satisfaction rankings bestowed by the Debtors themselves - is profitable, free of much of the debt that burdens its competitors (for example, its physical facilities are completely debt free), has the existing capacity and ability (and has evidenced the willingness) to reinvest in the business, and is already the type of dealership that the Debtors hope that, in time, all of its dealers will be. Livonia Chrysler intends to show, at trial of this contested matter, that the Debtors' decision to seek rejection of the Dealer Agreement with Livonia Chrysler, whether that decision was made acting alone or in unlawful concerted action with Fiat SpA (through its pre-ordained successor to the valuable assets of the Debtors, "New Chrysler"), is not the exercise of business judgment, and cannot be sanctioned by this Court.

## BACKROUND AND OBJECTIONS

1. Livonia Chrysler was incorporated in 1979, and has continuously operated as a Chrysler dealer since that time.

2. Livonia Chrysler has, since its incorporation, been a "family owned" business, whose majority interests were initially owned by Walter Norris and, since his death in 2003, have been owned by his daughter, Colleen McDonald.

3. Livonia Chrysler is the only Chrysler branded dealership in the Detroit metropolitan area that is owned and operated by a woman; Ms. McDonald is also on the Dodge dealers' association board (she is also the majority owner of a Dodge dealership whose dealer agreement is wrongfully proposed for rejection, in favor of inferior Dodge dealerships that are owned by males).

4. Livonia Chrysler has received, through the years, numerous accolades from Chrysler, in recognition of its status as a superior dealership. Those accolades and awards include, but are certainly not limited to, the following:

A. Qualification for the coveted Five Star Award since the inception of the award, reflecting "the highest honor bestowed on dealers who exhibit outstanding customer and employee practices".

B. Repeated receipt of the "Award for Excellence" (Chrysler's "highest honor").

C. Repeated recognition as "one of the top 100 Great Lakes Business Center dealers".

D. Repeated receipt of the "Pacesetter's award for Excellence" in retail sales (this award recognizes Livonia Chrysler as within the Top "100" dealerships in the country for retail sales and customer commitment).

E. Repeated receipt of the "Mopar Masters" award, reflecting excellence in parts sales.

F. Repeatedly high (and often the highest) SSI score of all dealers within Livonia Chrysler's Detroit Zone Group.

G. Repeatedly high (and often the highest) CSI score of all dealers within Livonia Chrysler's Detroit Zone Group.

H. Repeated recognition for "Lease Loyalty" leadership.

I. Recognition as having earned one of the highest "Fixed First Visit" [FFV] scores in the sales group, (the FFV score reflects the ability of the dealership's service department to fix a service problem correctly the first time, and avoid having the customer return to have it fixed again); dealers who Chrysler has elected to "retain" have scored in the bottom of this category.

5.  As a consequence of its superior service department, and its excellent FFV rating, Livonia Chrysler has been consistently requested by Chrysler LLC to repair vehicles owned by Chrysler LLC.

6.  Upon information and belief, Livonia Chrysler is among that group of dealerships whose dealer agreements have been identified as subject to "rejection," for the reason that they are in stronger financial condition than many of their competitors who are deeply indebted to Chrysler Financial not just for floorplan financing, but for personal financing provided by Chrysler Financial to the owners of those dealerships. In this regard, Chrysler has not, its protests to the contrary notwithstanding, chosen to retain those dealers who are the most financially sound and capable of withstanding the current economic climate; instead, Chrysler has subjectively picked and chosen its "favorites" based upon reasons unrelated to performance.

7.  In an effort to punish Livonia Chrysler for its female ownership, Livonia Chrysler has been repeatedly audited by Chrysler (the audits are allegedly triggered by the large numbers of repairs that Livonia Chrysler performs for Chrysler, thus resulting in Livonia Chrysler having a larger number of repairs than the Business Center average). Despite its efforts, Chrysler has been completely unable to find any material financial irregularities in the operations of Livonia Chrysler; upon information and belief, the competitors of Livonia Chrysler whose dealer agreements the Debtors propose to assume have experienced significant chargebacks as a consequence of audits that have disclosed material financial irregularities, which material financial irregularities the Debtors have chosen to ignore. The excessive, fruitless audits evidence the gender bias of the Debtors against Ms. McDonald, who has not participated in the "good old boy" network – the true metric used to reject the Dealer Agreement with Livonia Chrysler.

8.  As set forth in the Dealer Committee's Objections (Docket no. 1045), which Objections are incorporated herein by reference, the Debtors completely fail to disclose to this Court that even unprofitable dealerships (a classification that <u>does not</u> include Livonia Chrysler) do not adversely affect the Debtors at all, and thus rejection could not be in the best interests of the estate. The dealerships, including Livonia Chrysler, are independently owned, and each are profit centers for the Debtors. The Debtors have alluded to but utterly failed to identify any additional, material costs that are incurred or suffered, or would be continued to be incurred or suffered, by reason of the continuation of the Dealer Agreement with Livonia Chrysler. It is pure speculation that "overall sales in the reduced network are anticipated to grow beyond current sales levels within the existing network" (Debtors' Motion, ¶33), and there is no evidence that sales within the Great Lakes Business Center will increase based upon the rejection of the Dealer Agreement with Livonia Chrysler.

9.  The rejection of the Dealer Agreement with Livonia Chrysler will, since the resulting breach is a tort, give rise to a claim in favor of Livonia Chrysler that will have administrative priority (<u>see</u>, <u>e.g.</u> <u>Houbigant, Inc.</u> v. <u>ACB Mercantile</u>, 188 B.R. 347, 356-57 (Bankr. S.D.N.Y. 1995)), thus reducing if not eliminating any benefit to the estates by reason of rejection.

10.  The Debtors have not, and will be unable to, present to this Court evidence that the proposed rejection of the Livonia Chrysler Dealer Agreement will benefit the estate(s). While the Debtors allege that "New Chrysler has made a determination not to take an assignment of the agreements addressed by this Motion," (Motion fn.5), that assertion is not supported by any admissible evidence.

11.  Fed. R. Civ. P. 7001 provides, in pertinent part, as follows:

> An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings:

> ***

(7) a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief[.]

\*\*\*

(9) a proceeding to obtain a declaratory judgment relating to any of the foregoing.

Livonia Chrysler objects to the Motion to the extent that the Debtors, through the Motion, seek declaratory relief as to the effect of the proposed rejection (including alleged preemption of the "Dealer Laws" as defined in the Motion, and the nature and priority of the "Rejection Damages Claims" as defined in the Motion), and broad injunctive relief (including injunctive relief purporting to bar the exercise by state regulatory authorities of the exercise of their regulatory and police power authority over non-Debtor "New Chrysler" or any other purchaser). This relief may not be sought or granted by Motion, but may be granted only after commencement and adjudication of an adversary proceeding. See Fed. R. Civ. P. 7001. This Court lacks jurisdiction to grant declaratory or injunctive relief pursuant to the instant Motion.

12. This Court lacks subject matter jurisdiction to enjoin, particularly upon a Motion, state regulatory agencies from denying, conditioning, or suspending the license or authority of a non-Debtor manufacturer or dealer to operate in that state; this Court thus cannot confer upon New Chrysler protection from the prospective enforcement of state regulations simply by reason of the purchase by New Chrysler of assets from the Debtors. See, e.g. Halls Motor Transit, 889 F. 2d. 520 (3rd Cir. 1989). Except for the authority to enforce the transfer of liens to proceeds of sale, and effect a sale free and clear of liens and encumbrances, this Court's jurisdiction over assets constituting property of the estate ends upon sale to a third party, whether "New Chrysler" or otherwise.

13. The rejection of an executory contract must be after the exercise of sound business judgment, not on the basis of haphazard, subjective analysis and criteria in furtherance of a yet-to-be approved sub rosa plan in the guise of a §363(b) sale.

14. The Debtors' Motion at times improperly characterizes and seeks to treat the proposed rejection of the Dealer Agreement as effecting a termination of the Dealer Agreement, while at others acknowledging that rejection simply constitutes a court-permitted breach. Rejection is not termination, and does not afford the Debtors those rights that may have otherwise arisen upon expiration or earlier termination of the Dealer Agreement. Rejection is merely a breach by the Debtors of their respective obligations under the Dealer Agreement, not a termination of the agreement.

15. Livonia Chrysler objects to the proposed rejection to the extent that the Debtors are not contemporaneously rejecting the Site Control Agreement, if any exists to which Livonia Chrysler is a party or is otherwise bound, or which otherwise burdens the property upon which Livonia Chrysler is located. There is no benefit to the estate arising from the exclusion of the Site Control Agreement, if any, from the scope of the proposed rejected contracts, and the exclusion of such contracts further evidences the bad faith of the Debtors in seeking rejection of the Dealer Agreements.

16. These Objections are submitted without prejudice to such further objections as Livonia Chrysler may assert after the conclusion of discovery in this matter.


MEMORANDUM OF LAW

17. Livonia Chrysler submits that the points and authorities set forth above satisfy the requirements of Local Bankruptcy Rule for the Southern District of New York 9013-1(b).

WHEREFORE, Livonia Chrysler Jeep, Inc. respectfully requests that this Court deny the Debtors' Motion to reject the Dealer Agreement with Livonia Chrysler, and grant such other relief as may be just and equitable under the circumstances.

Respectfully submitted,

NEDELMAN GLOETZNER, PLLC

By: /s/ Michael A. Nedelman
       Michael A. Nedelman
28580 Orchard Lake Road, Suite 140
Farmington Hills, Michigan 48334
Telephone: (248) 855-8888
Dated: May 22, 2009                Fax: (248) 538-4556

THAV GROSS STEINWAY & BENNETT
30600 Telegraph Road, Suite 444
Bingham Farms, Michigan 48025
Phone: (248) 645-1700
Fax: (248) 645-8205
David Einstandig
deinstandig@thavgross.com

NEDELMAN GLOETZNER, PLLC
28580 Orchard Lake Road, Suite 140
Farmington Hills, Michigan 48334
Phone: (248) 855-8888
Fax: (248) 538-4556
Michael A. Nedelman
mnedelman@nglegal.com

THAV GROSS STEINWAY & BENNETT
30150 Telegraph Road, Suite 444
Bingham Farms, Michigan 48025
Phone: (248) 645-1700
Fax: (248) 645-8205
David E. Einstandig (pro hac vice pending)
deinstandig@thavgross.com

Counsel for Livonia Chrysler Jeep, Inc.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

————————————————————X
                                          :
In re:                                    :          Chapter 11
                                          :
CHRYSLER LLC, et al.,                     :          Case No.: 09-500002 (AJG)
                                          :
        Debtors.                          :          (Jointly Administered)
————————————————————X

## CERTIFICATE OF SERVICE

This is to certify that on May 22, 2009, I served a copy of the **Initial Objections of Livonia Chrysler Jeep, Inc., Inc. to Motion of the Debtors and Debtors in Possession of an Order, Pursuant to Section 105, 365 and 525 of the Bankruptcy Code and Bankruptcy Rule 6006, (A) Authorizing the Rejection of Executory Contracts and Unexpired Leases with Certain Domestic Dealers and (B) Granting Certain Related Relief** and this **Certificate of Service**, upon all counsel of record receiving electronic filing through the Court's electronic filing system and by email and overnight delivery to all parties on the Special Service List. I declare that the above statements are true to the best of my knowledge, information and belief.

/s/ Michael A. Nedelman
MICHAEL A. NEDELMAN