JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Corinne Ball
Nathan Lebioda

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
David G. Heiman
Thomas A. Wilson

JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Telephone: (404) 521-3939
Facsimile: (404) 581-8330
Jeffrey B. Ellman

Attorneys for Debtors
and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
:
In re                                          :   Chapter 11
:
Old Carco LLC                                  :   Case No. 09-50002 (AJG)
(f/k/a Chrysler LLC), *et al.*,[1]             :
:   (Jointly Administered)
                              Debtors.         :
:
-------------------------------------------------------------x

## NOTICE OF FILING OF SCHEDULE OF CERTAIN
## DESIGNATED AGREEMENTS AND CURE COSTS RELATED THERETO

---

[1]     A second amended list of the debtors and debtors in possession in these cases (collectively, the "Debtors"),
their addresses and tax identification numbers is located on the docket for Case No. 09-50002 (AJG)
(Docket No. 3945) and can also be found at www.chryslerrestructuring.com.

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On April 30, 2009 (the "Petition Date"), Old Carco LLC (f/k/a Chrysler LLC) and 24 of its affiliated Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  The remaining Debtor, Alpha Holding L.P., commenced its bankruptcy case by filing a voluntary petition with the Bankruptcy Court on May 19, 2009.

2.      Old Carco LLC (f/k/a Chrysler LLC) and its Debtor subsidiaries; Fiat S.p.A ("Fiat"); and Chrysler Group LLC (f/k/a New CarCo Acquisition LLC) (the "Purchaser"), a Delaware limited liability company formed by Fiat, entered into a Master Transaction Agreement, dated as of April 30, 2009 (the "Purchase Agreement"), that contemplated a set of related transactions for the sale of substantially all of the Debtors' tangible, intangible and operating assets, defined as the "Purchased Assets" in Section 2.06 of the Purchase Agreement, subject to higher and better offers made pursuant to the Bidding Procedures (as defined below).

3.      On May 3, 2009 and May 22, 2009, the Debtors filed motions with the Bankruptcy Court (Docket Nos. 190 and 1742) (collectively, the "Sale Motion") seeking, among other things, (a) authority to sell substantially all of the Debtors' assets free and clear of all liens, claims, interests and encumbrances to the Purchaser or another bidder (the "Sale Transaction"); (b) approval of certain procedures (the "Bidding Procedures") for the solicitation of competing bids with respect to the Sale Transaction; (c) authority to assume and assign certain executory contracts and unexpired leases in connection with the Sale Transaction; (d) approval of that certain settlement agreement between the Purchaser and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America to be executed at the

closing of the Sale Transaction; and (e) scheduling of a final hearing with the Bankruptcy Court for approval of the Sale Transaction.

4. A hearing on the Sale Motion was held before the Bankruptcy Court on May 1, 4 and 5, 2009, after which the Bankruptcy Court entered an order (Docket No. 492) (the "<u>Bidding Procedures Order</u>"), among other things, approving certain procedures (the "<u>Contract Procedures</u>") establishing a process for (a) the assumption of the Designated Agreements (as defined below) by the Debtors and the assignment of these agreements to the Purchaser, (b) the determination of the amounts necessary to cure defaults under the Designated Agreements (the "<u>Cure Costs</u>") and (c) the resolution of other disputes in connection with the assumption and assignment of the Designated Agreements pursuant to section 365 of the Bankruptcy Code.

5. Subsequently, on June 1, 2009, the Bankruptcy Court entered an order (Docket No. 3232) approving the sale of the Purchased Assets to the Purchaser. On June 10, 2009 (the "<u>Closing Date</u>"), the Debtors consummated the sale of the Purchased Assets to the Purchaser.

6. Consistent with the Contract Procedures, attached hereto as **<u>Exhibit A</u>** is a schedule identifying (a) certain agreements that the Debtors have identified as Designated Agreements that they intend to assume and assign to the Purchaser and (b) the corresponding Cure Costs under such Designated Agreements as of April 30, 2009 (the "<u>Assignment and Cure Schedule</u>"). This notice (the "<u>Assignment Notice</u>"), along with the relevant portion of the Assignment and Cure Schedule, has been or will be served on each of the Non-Debtor Counterparties in accordance with the Contract Procedures. Pursuant to agreements with the Debtors (each an "<u>Assumption and Assignment Agreement</u>"), each of the parties listed on

**Exhibit A** have consented to the assumption and assignment of their respective agreements to the Purchaser and the corresponding Cure Costs.

7.     In accordance with Section 2.10 of the Purchase Agreement and paragraph 19(c) of the Bidding Procedures Order, the Debtors may, at the Purchaser's request or with the Purchaser's consent, designate, up to the Agreement Designation Deadline (as defined below), additional executory contracts and unexpired leases as agreements to be assumed by the Debtors and assigned to the Purchaser pursuant to the Purchase Agreement (collectively, the "Additional Designated Agreements").  As used herein the "Agreement Designation Deadline" means, as applicable, (a) 30 days after the Closing Date with respect to the standard uniform dealership agreements in the form of the Chrysler Corporation Sales and Service Agreement, as well as agreements in the form of the Chrysler Direct Dealer Agreement; (b) 60 days after the Closing Date for executory contracts and unexpired leases with the Debtors' production suppliers; and (c) 90 days after the Closing Date for all other agreements.  In accordance with the Contract Procedures, the Debtors will file additional Assignment and Cure Schedules with this Court and serve additional Assumption Notices on applicable Non-Debtor Counterparties to the extent any executory contract or unexpired leases are designated to be Additional Designated Agreements.

8.     This Notice is qualified in its entirety by the Contract Procedures set forth in the Bidding Procedures Order, and Non-Debtor Counterparties are encouraged to read the Contract Procedures in their entirety.

Dated: June 22, 2009                    Respectfully submitted,
     New York, New York

/s/ Corinne Ball
Corinne Ball
Nathan Lebioda
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

David G. Heiman
Thomas A. Wilson
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

Jeffrey B. Ellman
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia  30309
Telephone:  (404) 521-3939
Facsimile:  (404) 581-8330

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

# EXHIBIT A

| SUPPLIER NAME | SUPPLIER ADDRESS | SUPPLIER CODE | SIGNED DATE | CURE AMOUNT |
|---|---|---|---|---|
| ANDROID INDUSTRIES LLC | 2155 EXECUTIVE HILL DR<br>AUBURN HILLS, MI 48326 | 54291 | 6/18/2009 | $8,000,000.00 |
| ASHLAND INC | 50 E RIVERCENTER BLVD<br>COVINGTON, KY 410120391 | 11560 | 6/5/2009 | $22,483.39 |
| BP PRODUCTS NA INC | 28100 TORCH PARKWAY MC417A<br>WARRENVILLE, IL 60555 | 15999 | 6/4/2009 | $0.00 |
| CORRIGAN OIL COMPANY | 775 NORTH 2ND ST<br>BRIGHTON, MI 48116 | 71515 | 6/1/2009 | $113,919.00 |
| DRIVESOL WORLDWIDE INC | 1104 W MAPLE RD<br>TROY, MI 48084 | 58308 | 6/3/2009 | $150,366.75 |
| FILTRAN DIVISION | 700 TERRACE POINT DR P O BOX 3301<br>MUSKEGON, MI 494433301 | 83443 | 6/16/2009 | $302,166.19 |
| JAC PRODUCTS INC | 225 S INDUSTRIAL DRIVE<br>SALINE, MI 48176 | 54196 | 6/7/2009 | $81,331.00 |
| JOHANN HALTERMANN LTD | 1201 SOUTH SHELDON ROAD<br>CHANNELVIEW, TX 77530 | 49613 | 6/2/2009 | $593,531.00 |
| KENOSHA METAL PRODUCTS | 8121 104TH STREET<br>PLEASANT PRAIRIE, WI 53158 | 60962 | 5/29/2009 | $76,911.00 |
| LINCOLN ELECTRIC COMPANY THE | 22801 ST CLAIR AVE<br>CLEVELAND, OH 44117 | 58249 | 5/28/2009 | $13,653.50 |
| MAHLE GMBH, MAHLE VENTILTRIEB GMBH | ONE MAHLE DRIVE<br>MORRISTOWN, TN 37815 | 13134 &<br>18929 | 6/8/2009 | $7,769,760.44 |
| MASONICO LLC | 17085 MASONIC DR<br>FRASER, MI 48026 | 62348 | 5/29/2009 | $807,458.00 |
| MITSUBISHI MOTORS SALES OF AMERICA | 33 8 SHIBA 5 CHOME<br>MINATO KU, TOKYO 1088410<br>JAPAN | 18514 | 6/17/2009 | $784,140.08 |
| NARMCO GROUP THE | 2575 AIRPORT ROAD<br>WINDSOR, ON N8W1Z4<br>CANADA | 77985 | 5/26/2009 | $2,369,044.87 |
| TAILOR WELDED BLANKS | 2573 S ROCHESTER ROAD BOX 1600<br>ROCHESTER, MI 483081600 | 23586 | 6/5/2009 | $0.00 |
| THYSSENKRUPP GERLACH COMPANY | 2573 S ROCHESTER ROAD BOX 1600<br>ROCHESTER, MI 483081600 | 24245 | 6/2/2009 | $351,889.00 |
| VEYANCE TECHNOLOGIES INC | 1144 EAST MARKET STREET<br>AKRON, OH 443160002 | 42332 | 6/5/2009 | $208,779.00 |
| WAUPACA FOUNDRY INC | 2573 S ROCHESTER ROAD BOX 1600<br>ROCHESTER, MI 483081600 | 97604 | 6/3/2009 | $1,130,698.00 |

See the attached Addendum for important information.

# EXCLUDED AGREEMENTS

| SUPPLIER NAME AND ADDRESS | SUPPLIER CODE | EXCLUDED PURCHASE ORDER |
|---|---|---|
| JAC PRODUCTS INC<br>225 S INDUSTRIAL DRIVE<br>SALINE, MI 48176 | 54196 | O4294007 |
| MAHLE GMBH, MAHLE VENTILTRIEB GMBH<br>ONE MAHLE DRIVE<br>MORRISTOWN, TN 37815 | 13134 &<br>18929 | O7556074<br>O9418004 |
| NARMCO GROUP THE<br>2575 AIRPORT ROAD<br>WINDSOR, ON N8W1Z4<br>CANADA | 77985 | O6137006 |
| VEYANCE TECHNOLOGIES INC<br>1144 EAST MARKET STREET<br>AKRON, OH 443160002 | 42332 | O3532014 |

See the attached Addendum for important information.

## ADDENDUM

The executory contracts and unexpired leases listed on this Exhibit A are hereby designated for assumption and assignment to the Purchaser in accordance with, and pursuant to, (1) section 365 of the Bankruptcy Code and (2) the terms and conditions of the Bidding Procedures Order.[1]

Consistent with the Bidding Procedures Order, the Designated Agreements are not listed on an agreement-by-agreement basis.  The Debtors are hereby designating all of the agreements relating to the supply of goods and services to the Debtors for assumption and assignment, except as otherwise expressly provided herein (any such agreement designated for assumption and assignment, a "Designated Agreement").  If certain agreements are identified at the end of Exhibit A (just prior to this Addendum) as excluded from the list of Designated Agreements (the "Excluded Agreements"), those Excluded Agreements are not hereby designated for assumption and assignment.  Unless otherwise stated on this Exhibit A or an applicable Assumption and Assignment Agreement, Designated Agreements include all contracts, purchase orders or similar agreements providing for the sale or provision of goods or services to the Debtors, and all related modifications, amendments, supplements, addenda and restatements thereof, related memoranda of understanding, ancillary agreements thereto and any and all similar agreements, including, without limitation, any Assumption and Assignment Agreement.

Each contract or lease listed on this Exhibit A will be assumed and assigned to the Purchaser only to the extent that any such contract or lease constitutes an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code.

The identified Cure Costs represent the aggregate Cure Costs for all of the Designated Agreements.  Prior to payment of the Cure Costs in accordance with the terms of the Bidding Procedures Order, the Cure Costs will be reduced by the aggregate amount of any payments made by the Debtors on account of pre-Petition Date claims against the Debtors.  To the extent applicable, the Cure Costs may be adjusted to account for changes in applicable currency exchange rates.  Generally, the Purchaser will make payment upon Cure Costs for Designated Agreements that are the subject of a Confirmation Notice in accordance with the terms of the Bidding Procedures Order.

---

[1] Capitalized terms used but not defined in this Addendum shall have the meanings given to them in the accompanying Assignment Notice.