**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
                                                              :

In re                                         :       Chapter 11
                                                             :

Old Carco LLC (f/k/a Chrysler LLC), *et al.*,[1] :       Case No. 09-50002 (AJG)
                                                             :

                        Debtors.      :       (Jointly Administered)
                                                               :
------------------------------------------------------- x

**NOTICE OF (I) ASSUMPTION BY DEBTORS AND ASSIGNMENT
TO PURCHASER OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES AND (II) CURE COSTS RELATED THERETO**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

        1.         On May 3, 2009, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a motion (the "Sale Motion")[2] with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") seeking, among other things, (a) authority to sell substantially all of the Debtors' assets free and clear of all liens, claims and encumbrances; (b) approval of certain procedures (the "Bidding Procedures") for the solicitation of bids with respect to the Sale Transaction (as defined in the Bidding Procedures); (c) authority to assume and assign certain executory contracts and unexpired leases in connection with the Sale Transaction; (d) approval of that certain settlement agreement between the Purchaser and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America to be executed at the closing of the Sale Transaction and (e) scheduling of a final hearing with the Bankruptcy Court for approval of the Sale Transaction. On May 31, 2009, the Bankruptcy Court granted the Sale Motion. The Sale Transaction closed on June 10, 2009.

        2.         Old Carco LLC, formerly Chrysler LLC, and its Debtor subsidiaries; Fiat S.p.A ("Fiat"); and Chrysler Group LLC, formerly New CarCo Acquisition LLC, a Delaware limited liability company formed by Fiat (the "Purchaser"), have entered into a Master Transaction Agreement, as amended, dated as of April 30, 2009 (the "Purchase Agreement"), which, together with certain ancillary agreements, contemplates a set of related transactions for the sale of substantially all of the Debtors' tangible, intangible and operating assets, defined as

---

[1]    A second amended list of the Debtors, their addresses and tax identification numbers is located on the docket for Case No. 09-50002 (AJG) (Docket No. 3945) and can also be found at www.chryslerrestructuring.com.

[2]    Copies of the Sale Motion and the Purchase Agreement (without certain commercially sensitive attachments) may be obtained by accessing the website established by the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC at www.chryslerrestructuring.com.

"Purchased Assets" in Section 2.06 of the Purchase Agreement, including the Designated Agreements (as defined below), the assets related to the research, design, manufacturing, production, assembly and distribution of passenger cars, trucks and other vehicles (including prototypes) under brand names that include Chrysler, Jeep® and Dodge (the "CarCo Business"), certain of the facilities related thereto and all rights including intellectual property rights, trade secrets, customer lists, domain names, books and records, software and other assets used in or necessary to the operation of the CarCo Business or related thereto (collectively, as defined in the Purchase Agreement, the "Purchased Assets") to the Purchaser.

      3.    By notice dated May 22, 2009 (the "Assignment Notice"), the Debtors informed certain non-Debtor counterparties to Designated Agreements (as defined below) (each, a "Non-Debtor Counterparty") of their intent to assume and assign to the Purchaser certain executory contracts and/or unexpired leases. The Assignment Notice contained an exhibit or annex identifying certain executory contracts and/or unexpired leases that the Debtors intended to assume and assign to the Purchaser (collectively, the "Designated Agreements" and each, a "Designated Agreement"), pursuant to section 365 of title 11 of the United States Code (the "Bankruptcy Code"). The exhibit or annex attached to the Assignment Notice also listed the amounts that the Debtors believed must be paid to cure all prepetition defaults under the Designated Agreements as of April 30, 2009, in accordance with section 365(b) of the Bankruptcy Code; provided, however, that such amount that must be paid to cure all prepetition defaults has, in some instances, been agreed in a writing signed by Debtor and the Non-Debtor Counterparty to be either higher or lower than the amount indicated in the Assignment Notice (such writing, a "Cure Agreement", and such amounts, as modified by any Cure Agreement, the "Cure Costs").

      4.    The Assignment Notice stated that objections, if any, to the proposed assumption and assignment of the Designated Agreements, including, but not limited to, objections related to adequate assurance of future performance, or objections relating to whether applicable law excuses the Non-Debtor Counterparty from accepting performance by, or rendering performance to, Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code, or objections to the proposed Cure Costs (each such objection, a "Section 365 Objection"), must be made in writing and filed with the Bankruptcy Court so as to be received no later than ten days after the date of the Assignment Notice (the "Section 365 Objection Deadline") by the Bankruptcy Court and other specifically identified parties. The Assignment Notice also stated that unless a Section 365 Objection was filed and served before the Section 365 Objection Deadline, all parties would be deemed to have consented to such Cure Costs and the assumption and assignment of such Designated Agreements, and any non-objecting party would be forever barred from objecting to the Cure Costs or to assumption and assignment and from asserting any additional cure or other amounts against the Debtors, their estates or the Purchaser. Furthermore, the Assignment Notice stated that if the Non-Debtor Counterparty to a Designated Agreement failed to timely assert a Section 365 Objection, such Designated Agreement would be deemed to be assumed by the Debtors and assigned to the Purchaser and the proposed Cure Cost related to such Designated Agreement would be established and approved in all respects. Notwithstanding anything to the contrary in this notice, to the extent the Section 365 Objection Deadline has not passed for any Designated Agreement (including, but not limited to, cases where such deadline has been extended by written agreement of the Debtors and the Non-Debtor Counterparty), until the Section 365 Objection Deadline has passed, the Non-Debtor Counterparty to such Designated

Agreement is not deemed to have consented to such Cure Costs and the assumption and assignment of such Designated Agreements and the proposed Cure Cost related to such Designated Agreement will not be established and approved in all respects. In addition, and for the avoidance of doubt, to the extent a Non-Debtor Counterparty has made a timely filed Section 365 Objection to the Cure Costs or the accuracy of the information provided in the Assignment Notice pending on the date hereof, such objection is preserved pending resolution by Cure Agreement or order of the Court.

5. The Designated Agreements identified in Exhibit A hereto (as modified by the Addendum thereto) (the "Exhibit") are hereby assumed by the Debtors and assigned to the Purchaser, and the Cure Costs listed in the Exhibit related to such Designated Agreements are established and approved in all respects, subject only to the conditions set forth in paragraph 6 hereof. The Cure Costs listed in the Exhibit may reflect Cure Costs agreed to in the Cure Agreements, as applicable. Such Designated Agreements are hereby deemed to be Confirmed Agreements as that term is defined in the Assignment Notice.

6. If the Cure Costs related to a Designated Agreement are established by the Court or a Cure Agreement in an amount different than the amount specified in the Exhibit, such Designated Agreement shall remain a Confirmed Agreement and each of the Non-Debtor Counterparty and, so long as the Non-Debtor Counterparty is performing under the Confirmed Agreement, the Purchaser shall be bound by the established Cure Costs. The Cure Costs established by a the Court or a Cure Agreement shall govern such Confirmed Agreement without the need to amend the Exhibit hereto.

7. Subject to the conditions set forth herein, having been assumed and assigned as a Confirmed Agreement, a Designated Agreement is not subject to rejection under section 365 of the Bankruptcy Code.

8. Except as may have otherwise been agreed to in a Cure Agreement, the defaults under the Designated Agreements that must be cured in accordance with section 365(b) of the Bankruptcy Code shall be cured as follows: the Purchaser shall pay the Cure Costs relating to an assumed executory contract or unexpired lease as soon as practicable (and in any event not later than ten days after the date hereof), provided, however, that Purchaser shall pay Disputed Cure Costs (as defined in the Bidding Procedures) as soon as practicable following (and in any event not later than 10 days after) the date the amount thereof is finally determined. Such Cure Cost shall be reduced by the aggregate amount of any payments made to the Non-Debtor Counterparty by the Debtors pursuant to any order of the Bankruptcy Court authorizing the payment of prepetition claims against the Debtors.

9. The assumption and assignment of any Designated Agreement is without prejudice to Purchaser's right not to confirm any other Designated Agreement in the future, whether or not related or similar to a Designated Agreement that is assumed and assigned by this notice.

Dated: July 21, 2009
   New York, New York

Respectfully submitted,

/s/ Andrew G. Dietderich
Andrew G. Dietderich
Hydee R. Feldstein
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

ATTORNEYS FOR FIAT S.p.A. AND
CHRYSLER GROUP LLC

**Exhibit A**

**[Schedule of Certain Confirmed Real Property Agreements
and Cure Costs Related Thereto]**

**Debtor as Lessee**

| | Address | Type of Interest | Type of Property | Lessee | Landlord Notice Address | Cure Amount |
|---|---|---|---|---|---|---|
| 1. | 10100 Boggy Creek<br>Orlando, Florida 32824 | Leased | Warehouse Office | Chrysler LLC | <u>Landlord</u><br>Bellambert, LLC<br>Attn: Director of Asset Management,<br>c/o Eaton Vance Management,<br>2 International Place,<br>Real Estate Investment Group,<br>Boston, MA 02110<br><u>Payee</u><br>Bellambert, LLC<br>Attn: Perry J. Monroe,<br>c/o Wells Fargo,<br>45 Tremont Street,<br>Second Floor,<br>San Francisco, CA 94105<br><u>Managing Agent</u><br>Lincoln Property Company<br>of Florida, Inc.<br>c/o Lincoln Property Company<br>of Florida, Inc.<br>300 S. Orange Ave., Suite 1575,<br>Orlando, FL 32801 | $0 |

| | Address | Type of Interest | Type of Property | Lessee | Landlord Notice Address | Cure Amount |
|---|---|---|---|---|---|---|
| 2. | 13005 State Highway 55<br>Plymouth, Minnesota 55441 | Leased | Warehouse | Chrysler Motors LLC | <u>Landlord</u><br>Nathan-Jeffrey, LLC and Pasan, LLC, as to an undivided 50% interest each<br>c/o Kin Properties, Inc.<br>185 NW Spanish River Boulevard<br>Suite 100<br>Boca Raton, FL 33431-4230<br><u>Payee</u><br>Kin Properties, Inc.<br>185 NW Spanish River Boulevard<br>Suite 100<br>Boca Raton, FL 33431-4230<br><u>Attorney</u><br>Allen Lev<br>Kin Properties, Inc.<br>185 NW Spanish River Boulevard<br>Suite 100<br>Boca Raton, FL 33431-4230 | $0 |

## ADDENDUM

The executory contracts and unexpired leases identified in Exhibit A are hereby assumed by the Debtors and assigned to the Purchaser in accordance with, and pursuant to, (1) section 365 of the Bankruptcy Code and (2) the terms and conditions of the Bidding Procedures and the accompanying notice.[3]

Subject to the terms of the accompanying notice, the Purchaser is hereby confirming the agreements identified on Exhibit A for assumption and assignment. Unless otherwise stated in Exhibit A or an applicable Cure Agreement, Designated Agreements include all related modifications, amendments, supplements, addenda and restatements thereof, related memoranda of understanding, ancillary agreements thereto and any and all similar agreements, including Cure Agreements.

The identified Cure Costs represent the Cure Costs for each particular Designated Agreement. Prior to payment of the Cure Costs in accordance with the terms of the Bidding Procedures, the Cure Costs will be reduced by the aggregate amount of any payments made by the Debtors on account of prepetition claims against the Debtors. To the extent applicable, the Cure Costs may be adjusted to account for changes in applicable currency exchange rates.

---

[3] Capitalized terms in this Addendum shall have the meanings specified in the accompanying Notice.