UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
_____
                                    :
In re                               :      Chapter 11
                                    :
OLD CARCO LLC, f/k/a                :      Case No. 09 B 50002 (AJG)
CHRYSLER LLC, *et al.*,             :
                                    :
                    Debtors.        :      (Jointly Administered)
_____:


OPINION DENYING REJECTED DEALERS' MOTION FOR RECONSIDERATION OF THE
    JUNE 9, 2009 REJECTION ORDER AND THE JUNE 19, 2009 REJECTION OPINION

APPEARANCES:

PIDGEON & DONOFRIO GP
Counsel for Certain Affected Dealers
Everett, Washington

            By:     Leo C. Donofrio, Esq.
                    Stephen Pidgeon, Esq.

JONES DAY
Counsel for the Debtors
New York, New York

            By:     Corinne Ball, Esq.
                    Veerle Roovers, Esq.
        -and -

Cleveland, Ohio

            By:     David G. Heiman, Esq.
        -and-

Atlanta, Georgia

            By:     Jeffrey B. Ellman, Esq.


ARTHUR J. GONZALEZ
CHIEF UNITED STATES BANKRUPTCY JUDGE

        On June 9, 2009, this Court issued an order (the "Rejection Order"), which authorized

Old Carco LLC (f/k/a Chrysler LLC) and certain of its affiliates as debtors and debtors in possession (collectively with Old Carco LLC, the "Debtors") to reject executory contracts and unexpired leases with certain domestic dealers, and also granted related relief. On June 19, 2009, the Court issued a written Opinion (the "Opinion") in support of the relief granted in the Rejection Order. On December 25, 2009, certain of the dealers filed a motion and on January 15, 2010, filed an amended motion (as amended, the "Reconsideration Motion"),[1] pursuant to Federal Rules of Civil Procedure 60(b)(1) and 60(d)(3),[2] seeking that the Court reconsider the Rejection Order and the Opinion. (All of the dealers who are proponents of the Reconsideration Motion are referred to collectively as the "Movants"). On January 15, 2010, the Debtors filed an objection to the Reconsideration Motion. Thereafter, on January 22, 2010, the Movants filed a response to the Debtors' objection.[3]

The Movants argue that they are entitled to relief under Rule 60(b)(1) because the Court overlooked factual matters entered into the record, controlling decisions and law that would alter the court's conclusion. In addition, the Movants argue that the Court misapplied the law. Further, the Movants argue that they are entitled to relief from the Rejection Order and Opinion, pursuant to Rule 60(d)(3) because of fraud on the Court.

---

[1]The amended motion sought the same relief as the original motion and was filed for the sole purpose of including certain additional dealers as proponents of the Reconsideration Motion. In addition, on January 20, 2010, an additional dealer filed a pleading to join in the Reconsideration Motion.

[2]Hereinafter, a reference to a "Rule" is to one of the Federal Rules of Civil Procedure, and a reference to "Fed. R. Bankr. P." is to one of the Federal Rules of Bankruptcy Procedure.

[3]The case management order entered in these cases sets forth the mechanism for scheduling a hearing. The Movants neither scheduled a hearing for this matter in accordance with the case management order nor made any other effort to schedule a hearing. Further, the Debtors did not request a hearing on this contested matter pursuant to Fed. R. Bankr. P. 9014. In addition, the Court determined that a hearing was not necessary on this matter. Therefore, no hearing was conducted and the Court has made its determination after the submission of the pleadings.

*DISCUSSION*

Rule 60, titled Relief from a Judgment or Order, is incorporated into bankruptcy practice by Fed. R. Bankr. P. 9024, with certain limitations. Rule 60(b) sets forth the basis upon which a court "may relieve a party or its legal representative from a final judgment, order, or proceeding." The rule balances the need to serve justice while "preserving the finality of judgments." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). Inasmuch as the rule affords "extraordinary judicial relief," courts require a showing of "exceptional circumstances" for its application. *Id*. Additional requirements are that (i) the supporting evidence be "highly convincing;" (ii) there be good cause for the movant's failure to act sooner; and (iii) application of the rule not impose undue hardship on other parties. *See Freedom, N.Y., Inc. v. United States*, 438 F. Supp.2d 457, 462-63 (S.D.N.Y. 2006) (citations omitted). A decision concerning a Rule 60(b) motion is within the discretion of the court. *See Nemaizer*, 793 F.2d at 61-62.

*Rule 60(b)(1)*

Rule 60(b)(1) provides, in relevant part, that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect."

In the Second Circuit, the reference to "mistake" in Rule 60(b)(1) has been held to include mistakes made by the court. *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 670 (2d Cir. 1977) (citing *Tarkington v. United States Lines Co.*, 222 F.2d 358, 360 (2d Cir 1955)) (other citation omitted). Prior to the 1946 amendment to the rule, the rule provided that relief could be granted to a party for "*his* mistake;" however, the amended language made "clear that relief from judgment was available for any mistake, including the mistake of the court." *Gey Assocs.*

*General Partnership v. 310 Assocs. (In re 310 Assocs.),* 346 F.3d 31, 34-35 (2d Cir. 2003) (citations omitted). As amended, the rule initially was applied to authorize a court to relieve a party from a court's mistake concerning the law; however, it was subsequently acknowledged that the rule was applicable to a court correcting its own mistakes concerning facts. *See 310 Assocs.,* 346 F.3d at 35 (citing *Cappillino v. Hyde Park Cent. Sch. Dist.*, 135 F.3d 264 (2d Cir. 1997)). Thus, the Second Circuit has approved the use of Rule 60(b)(1) motions to allow a court to correct its own mistakes of either law or fact. *See Chiulli v. I.R.S.*, 2006 WL 3008084 * 2 (S.D.N.Y. 2006). The Second Circuit's view is that, if a court has made a mistake of law or fact, it may make "good sense" to permit the court to correct such error and thereby avert the need for an appeal, but only if the motion for reconsideration has been made within the permissible time to appeal. *See Schildhaus v. Moe*, 335 F.2d 529, 531 (2d Cir. 1964).

A contrary, narrower view of Rule 60(b)(1) holds that the rule does not apply when the court made an erroneous ruling. *See*, *e.g.*, *Silk v. Sandoval*, 435 F.2d 1266, 1267-68 (1st Cir. 1971) (noting that the broad view of Rule 60(b)(1) undermines Rule 59(e) by making the relief available for judicial errors of law under the two rules co-extensive). Under this more restrictive view, only judicial mistakes attributable to special circumstances would warrant relief under Rule 60(b)(1). *See Id.*

With respect to the timing for filing a Rule 60(b)(1) motion, Rule 60(c)(1), in relevant part, provides that Rule 60(b)(1) motions "must be made within a reasonable time – and . . . no more than a year after the entry of the judgment or order or the date of the proceeding." Inasmuch as Rule 60(b)(1) motions may be made up to one year after the entry of a judgment or order, there was concern that extending Rule 60(b)(1) to apply to mistakes made by a court

would result in parties utilizing Rule 60(b)(1) to circumvent the time limitations for filing an

appeal. *See Schildhaus*, 335 F.2d at 531 (noting that a treatise suggests "that a reasonable time

for making a motion under Rule 60(b) on the basis of judicial error should not exceed that

allowed for an appeal"); cf. *Silk*, 435 F.2d at 1268 (criticizing attempt to utilize a "broad

construction of 'mistake' [to extend] the ten-day limit for motions under Rule 59(e)"[4]).

To prevent Rule 60(b)(1) from being used to circumvent the time limitations for an

appeal, the Second Circuit has determined that when a 60(b)(1) motion concerns a court's own

substantive error, such motion "may not be made after the time for appeal has elapsed." *Vesco*,

556 F.2d at 670 (citing *Schildhaus*, 335 F.2d at 531). By contrast, a court's authority to correct a

clerical error may be exercised at any time – as set forth in Rule 60(a), which provides that a

"court may correct a clerical mistake or a mistake arising from oversight or omission whenever

one is found in a judgment, order, or other part of the record."[5]

Consequently, the Second Circuit acknowledges that Rule 60(b) is not "a substitute for a

direct appeal from an erroneous judgment." *Schildhaus*, 335 F.2d at 531. Therefore, as

previously noted, while the Second Circuit authorizes a court to correct its own mistakes of law

because it is more efficient than requiring an appeal, a party may not use a Rule 60(b)(1) motion

---

[4]Rule 59, incorporated into bankruptcy practice by Fed. R. Bankr. P. 9023, allows a party to move for a new trial or to alter or amend a judgment. Although Rule 59(e) sets forth the time limitation for filing a motion to alter or amend a judgment, that time frame is further restricted in bankruptcy practice by Fed. R. Bankr. P. 9023. In all instances, the time frame is less than or equal to the time within which an appeal may be filed regarding the relevant judgment. Certain time frames set forth in the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure were amended, effective December 1, 2009. Rule 59(e) allows a motion to alter or amend a judgment to be filed within 28 days of the judgment. (Prior to the 2009 amendments, that time frame was 10 days). In bankruptcy practice, the time limitation for filing a motion to alter or amend a judgment under Fed. R. Bankr. P. 9023 is "no later than 14 days after entry of judgment." (Prior to the 2009 amendments, and relevant to the judgment at issue, the time limitation was 10 days.)

[5]A court may correct clerical errors on motion or on its own, with or without notice, except during the pendency of an appeal, when leave of the appellate court is required.

after the deadline for filing a notice of appeal as "a way to assert an otherwise time-barred appeal." *310 Assocs.*, 346 F.3d at 35. In advancing this limitation, the Second Circuit makes reference to the further limiting language of Rule 60 that requires a Rule 60(b)(1) motion to be made "within a reasonable time." *See Schildhaus*, 335 F.2d at 531. That limiting language is currently set forth in Rule 60(c)(1). While Rule 60(c)(1) caps the time within which a Rule 60(b)(1) motion may be made to not more than a year after the entry of the judgment or order or the date of the proceeding, it also requires that such motion be made "within a reasonable time." A "reasonable time" for a motion under Rule 60(b) for judicial error should be no greater than the time allowed to file an appeal. *See* 11 C. Wright, A. Miller, & M. Kane, FEDERAL PRACTICE & PROCEDURE, §2858 at (2d ed. 2009) (noting that limiting the time for filing such motion to "before the time for appeal has expired . . . [is] understandable since motions under that provision are also required to be made within a 'reasonable time'").[6]

In *Schildhaus*, the court did not deem that a motion for relief from judicial error filed more than 8 months after entry of a judgment was a reasonable time. 335 F.2d at 531. Indeed, the *Schildhaus* court noted that, after the ten-day limit set for Rule 59(e) motions to alter or amend a judgment, the Second Circuit granted relief under Rule 60(b) for what is "merely an error by the court" only under "very special facts." *Id.*, 335 F.2d at 531 (citing *Tarkington v.*

---

[6]Thus, in non-bankruptcy matters, prior to the December 1, 2009 amendments, because a party could file a motion for reconsideration based upon judicial error under Rule 59(e) within 10 days of entry of the judgment, capping the time limit to file a similar motion under Rule 60(b)(1) to the time allowed for an appeal meant that the ability to file such motion under Rule 60(b)(1) afforded the party an additional 20 days (up to the 30-day appeal limit). Inasmuch as the 2009 amendment extended the Rule 59(e) deadline to 28 days, the extension for a similar motion under Rule 60(b)(1) now only affords an additional 2 days (up to the 30-day appeal limit). In bankruptcy practice, however, because the time limit for filing a motion for reconsideration under Fed. R. Bankr. P. 9023 is 14 days, which is the same as for filing an appeal under Fed. R. Bankr. P. 8002, the filing of a Rule 60(b)(1) motion does not afford any additional time. (The same held true prior to the 2009 amendments, when both of these bankruptcy time frames were 10 days.)

*United States Lines Co.*, 222 F.2d 358 (2d Cir. 1955). Subsequently, the Second Circuit

described the "very special facts" in *Tarkington* as "a controlling Supreme Court decision

handed down eleven days after the entry of judgment and a motion made ten days thereafter,

within the 30 days allowed for appeal." *Otte v. Mfrs. Hanover Commercial Corp. (In re Texlon*

*Corp.)*, 596 F.2d 1092, 1100 (2d Cir. 1979).

The *Texlon* court noted that the treatise that had originally promoted the use of Rule

60(b)(1) as a mechanism to correct judicial error - the view adopted by the Second Circuit - in a

more recent edition "reflect[ed] some disenchantment with [that] practice" and, in addition, that

the other leading treatise on civil practice showed even "less enthusiasm" for the practice.

*Texlon*, 596 F.2d at 1100 (citing, respectively, 7 MOORE, FEDERAL PRACTICE ¶ 60.-22[3] and 11

WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2858 (1973)). The *Texlon* court

concluded that a Rule 60(b)(1) motion seeking reconsideration of an *ex parte* financing order

entered by the court, which motion was filed two and one-half months after the entry of the

order, was untimely because the "reasonable time" requirement of Rule 60(b) "requir[es] a

motion for relief from judicial mistake to be made within the time allowed for appeal." *Id*. at

1100 (citations omitted). Notwithstanding the fact that the trustee in *Texlon* was not appointed

until after the deadline for filing an appeal had expired and the trustee filed the reconsideration

motion within a week of its appointment,[7] the court held that the motion for reconsideration was

untimely under Rule 60(b)(1). *Texlon*, 596 F.2d at 1100.

---

[7]Although the trustee in *Texlon* could not have appealed within the ten-day limit because his appointment
did not occur until almost two months after the entry of the *ex parte* order, the lender in *Texlon* argued that a timely
appeal could have been filed by the informal creditors' committee or, alternatively, that the unofficial committee,
which was elected within three weeks of entry of the order, could have filed an appeal much earlier by filing a
motion with the court for an extension of time. *Texlon*, 596 F.2d at 1100 n. 8.

*Inherent Power*

The *Texlon* court, however, allowed for reconsideration of the *ex parte* order as an

exercise of the bankruptcy court's inherent power. *Id*. The court concluded that because the

bankruptcy court made a determination that it had erred in signing an *ex parte* financing order,

which allowed for cross-collateralization, the bankruptcy court could reconsider that order after

the time period allowable for appeal under such inherent power. *Id*. at 1100. The *Texlon* court

indicated "that a district court sitting in bankruptcy could in its discretion rehear a cause even

after the expiration of the period allowed for appeal 'if no intervening rights will be prejudiced

by its action' and that if the court rehears the petition 'upon the merits', the time to appeal would

run from its grant or denial." *Texlon*, 596 F.2d at 1100 (citing *Wayne United Gas Co. v. Owens-*

*Ill. Glass Co.*, 300 U.S. 131, 137-38, 57 S. Ct. 382, 386, 81 L. Ed. 557 (1937) and *Pfister v.*

*Northern Illinois Finance Corp.*, 317 U.S. 144, 63 S. Ct. 133, 87 L. Ed. 146 (1942)).

Courts in other circuits have declined to allow reconsideration under the "inherent

power" theory, arguing that, as a result of the adoption of Federal Rule of Bankruptcy Procedure

9024 and Federal Rule of Civil Procedure 60(b), the right to reconsider orders now is subject to

the standards set by those procedural rules, which specify the requisite time frames. *In re*

*Watford*, 192 B.R. 276, 279 (Bankr. M.D. Ga. 1996) (citing *Gekas v. Pipin (In re Met-L-Wood*

*Corp.)*, 861 F.2d 1012 (7th Cir. 1988), *cert. denied*, 490 U.S. 1006, 109 S. Ct. 1642, 104 L. Ed.2d

157 (1989)) (noting that "the old inherent power to reconsider bankruptcy orders has been

merged into the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil

Procedure").

In support of the view that a bankruptcy court retains inherent power to reconsider its

orders and judgments notwithstanding the adoption of Rule 60(b), the *Texlon* court cited to the

Moore treatise for a description of the "distinctive nature" of a bankruptcy proceeding as "one

continuous, often long, proceeding, within which many other controversies and proceedings

occur during the course of administration. *Texlon*, 596 F.2d at 1100 (quoting 7 Moore, FEDERAL

PRACTICE, ¶ 60.18 at 215). Accordingly, the treatise concluded that there was "practical utility"

in a rule that allowed for bankruptcy orders to be vacated or modified where "subsequent events

presented during administration" showed the need for such relief. *Id.*

Similar to a Rule 60(b)(1) determination, a decision whether to reconsider an order,

judgment or proceeding under its inherent power is within the court's discretion. *Texlon*, 596

F.2d at 1100. Moreover, under the "inherent power" theory, there must be "good reason" for the

court to reconsider, and the motion seeking such relief must be made within a reasonable time.

*Wayne*, 300 U.S. at 137, 57 S. Ct. at 385-86 (concluding that a court can "revise its judgments

upon seasonable application" and "upon application diligently made"). In addition, the motion

must be made "before rights have vested" based upon the court's action. *Id.* (noting that a court

may grant a rehearing "if no intervening rights will be prejudiced by [the court's] action").

The *Texlon* court exercised its inherent power when confronted with special factual

circumstances, including the *ex parte* nature of the order. Indeed, prior to signing the financing

order on the first day of the case, the bankruptcy court only heard the debtor in possession's

representations concerning the need for credit and the absence of alternative funding. *Texlon*,

596 F.2d at 1098. The *Texlon* court noted that a debtor in possession would naturally promote

its needs for immediate financing and to maintain a relationship with lenders at the expense of

creditor interests. *Id.* In addition, the *Texlon* court noted that the absence of a countervailing

viewpoint would prevent exploration of other available courses of action that might have been presented by a "more objective trustee" and that a hearing with participation by various viewpoints might have shown other financing sources or that creditors would prefer liquidation of the business rather than the preferential treatment afforded the lender. *Id*. at 1098-99. Thus, in deciding to allow reconsideration for judicial error beyond the time for an appeal, the *Texlon* court was influenced by the limited nature of the original hearing, which resulted in the order that was the subject of the motion for reconsideration.

*Vacating a Judgment or Order Based on Fraud*

Pursuant to Fed. R. Civ. P. 60(b)(3), "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" based upon

> fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party.

A trial court's decision to grant a motion to amend a judgment is within its discretion. *See Taylor v. Texgas Corp*., 831 F.2d 255, 258 (11th Cir. 1987) (citation omitted).

In addition, as set forth in subsection (d) of Rule 60, the authority granted by Rule 60 is not intended to limit any power the court otherwise has to relieve a party from a judgment, order or proceeding, including the power to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3).

The Movants have moved for relief from the previous judgment pursuant to Rule 60(d)(3) alleging "fraud on the court." The Movants, however, have not moved pursuant to Rule 60(b)(3) as there are no allegations of fraud by an "opposing party," a required element of a Rule 60(b)(3) motion. Nevertheless, the Court believes that an overview of Rule 60(b)(3) will assist in an understanding of the nature of the fraud that must be shown to establish "fraud on the

10

court" pursuant to Rule 60(d)(3).

*Rule 60(b)(3)*

By its terms, Rule 60(b)(3) provides relief in instances where the fraud is committed by an opposing party.  *See Simons v. United States*, 452 F.2d 1110, 1115 (2d Cir. 1971) (noting that Rule 60(b)(3) permits relief only for fraud "of an adverse party").[8]  The movant has the burden to establish, by clear and convincing evidence, that the adverse party obtained the judgment through fraud, misrepresentation or other misconduct.  *See Texgas Corp.*, 831 F.2d at 259 (citation omitted); *see also Entral Group Int'l, LLC v. 7 Day Café & Bar*, 298 Fed. Appx. 43, 44 (2d Cir. 2008) (noting that a motion under Rule 60(b)(3) cannot be granted absent clear and convincing evidence of material misrepresentations); *Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1386 (Fed. Cir. 2007) (noting that fraud must be shown by clear and convincing evidence) (citation omitted).  To prevail under Rule 60(b)(3), a movant must show that the alleged fraud, misrepresentation or other misconduct precluded it from fully and fairly presenting its case.  *See State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004); *Entral Group*, 298 Fed. Appx. at 44; *Atkinson v. Prudential Prop. Co., Inc.*, 43 F.3d 367, 372-73 (8th Cir. 1994) (concluding that "the movant must show, with clear and convincing evidence, that the opposing party engaged in a fraud or misrepresentation that prevented the movant from fully and fairly presenting its case").

Accordingly, even if its adversary misrepresents certain relevant information or fails to disclose such information, a party who itself has access to such information cannot establish

---

[8]The reference to the phrase "of an adverse party" is to the language employed in Rule 60(b)(3) prior to the non-substantive 2007 amendment  (*see infra* footnote 9) to that rule, which substituted the phrase "by an opposing party" in its place.

fraud under Rule 60(b)(3) because it cannot establish that its opponent's misrepresentation or failure to disclose prevented it from fully and fairly presenting its case. *See Taylor*, 831 F.2d at 260 (concluding that, where company itself was sending pension payments to opponent, company could not establish such opposing party's failure to mention that fact prevented the company from fully and fairly presenting its case); *see also State Street*, 374 F.3d at 176 (concluding that where movant admitted that letter allegedly concealed by other party was present in its own files, as a matter of law, movant could not claim that it was prevented from fully presenting its case); *Atkinson*, 43 F.3d at 372-73 (same, because movant had "fair opportunity" to discover the letter by examining its own files, and also because production of the letter would have made no difference to the outcome of case); *Entral Group*, 298 Fed. Appx. at 44 (noting that, where party received notice of lawsuit and filing related to request for entry of default judgment, it was not precluded from fully presenting its case against the entry of such default based upon opponent's failure to disclose to court an earlier letter between the parties agreeing not to proceed with the action pending settlement negotiations).

A motion pursuant to Rule 60(b)(3) "must be made within a reasonable time . . . [but] no more than a year after the entry of the judgment or order." Rule 60(c)(1).

### *Rule 60(d)(3)*

Rule 60(d)(3)[9] preserves a court's power to "set aside a judgment for fraud on the court."

---

[9] Prior to the 2007 amendments to Rule 60, the rule included both the type of fraud delineated in Rule 60(b)(3) and the concept of "fraud upon the court" within subsection (b) of Rule 60. Courts interpreting the former "fraud upon the court" language referred to it as being either the "saving clause," *see, e.g., Kupferman v. Consol. Research & Mfr. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972), or the penultimate sentence of Rule 60(b), *see e.g.*, *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 (2d Cir. 1972). After that amendment, "fraud on the court" was set forth in the separate subsection (d). Thus, the amendment moved the concept to a separate section and changed the relevant wording from "fraud *upon* the court" to "fraud *on* the court." The Advisory Committee Notes to the 2007 amendments indicate that

While the clause is not an affirmative grant of power, it is a recognition that the reference in Rule 60(b)(3) to certain specific grounds for relief by motion does not limit a court from exercising whatever power it otherwise has to entertain independent actions. *See Simons v. United States*, 452 F.2d 1110, 1116 (2d Cir. 1971). For example, a court has equitable power to entertain a party's action that seeks to set aside a judgment based upon "fraud in its procurement." *Id*. Moreover, courts addressing "motions for fraud upon the court have consistently proceeded on the presumption that the savings clause applies to motions." *Weldon v. United States*, 225 F.3d 647, 2000 WL 1134358 at *1 (2d Cir. 2000) (unpublished summary order) (citing *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 (2d Cir. 1972); and *Kupferman v Consol. Research & Mfr. Corp*., 459 F.2d 1072, 1078 (2d Cir. 1972) (other citation omitted)).

A court may exercise its equitable power to set aside a fraudulent judgment "to maintain the integrity of the courts and safeguard the public." *United States v. Smiley*, 553 F.3d 1137,

---

[t]he language of Rule 60 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.

Based upon the statement in the Advisory Committee notes concerning stylistic changes, courts have continued to apply the pre-amendment interpretation of "fraud upon the court" under former Rule 60(b)(3) to the "fraud on the court" language under the new Rule 60(d)(3). *See e.g., Grodin v. Allen*, No. 3:03-CV-1685-D, 2009 WL 1437834 at *7 n. 5 (N.D. Tex. 2009). For ease of reference, the Court's analysis refers to the interpretation of fraud on the court under Rule 60(d)(3) even where the cited court was analyzing the pre-amendment "fraud upon the court" saving clause of Rule 60(b).

.

1142 (8th Cir. 2009).  If there is fraud on a court, that court may *sua sponte* take action to set

aside any judgment entered.  *See Martina Theatre Corp. v. Schine Chain Theatres, Inc.*, 278 F.2d

798, 801 (2d Cir. 1960).  Moreover, the court can take such action even upon the suggestion of

an entity with unclean hands.  *Id*. (citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322

U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), *overruled on other grounds by Standard Oil Co.

of Cal. v. United States*, 429 U.S. 17, 97 S. Ct. 31, 50 L. Ed.2d 21 (1976).  Further, a court may

conduct its own investigation to determine if it has been defrauded.  *See Smiley*, 553 F.3d at

1142.  Nevertheless, because of the importance of preserving the finality of a judgment, a court

must use restraint and discretion in determining whether to vacate such judgment.  *Id*. at 1144.

There must be clear and convincing evidence that a fraud was perpetrated on the court with any

doubts resolved in favor of upholding the finality of the judgment.  *Id*.

    While Rule 60(c)(1) limits the time within which a motion under Rule 60(b)(3) must be

made to one year, a claim based upon fraud on the court under Rule 60(d)(3) is intended "to

protect the integrity of the judicial process" and, therefore, is not time-barred.  *Bowie v. Maddox*,

No. 03-948, 2010 WL 45553, at * 2,  ___ F.Supp. ___, ____ (D. D.C. 2010) (citing 12 James

WM. MOORE et al., MOORE'S FEDERAL PRACTICE § 60.21[4][g] & n.52 (3d ed. 2009) (other

citation omitted)).

    In light of the above-discussed time limitation that applies to motions brought under Rule

60(b)(3) but not Rule 60(d)(3), it is recognized that motions under 60(d)(3) for fraud on the court

must encompass conduct other than that proscribed by Rule 60(b)(3).  *See Kupferman*, 459 F.2d

at 1078 (noting that otherwise the time limitation for Rule 60(b)(3) motions would be rendered

"meaningless").

Accordingly, the standard for establishing fraud on the court under Rule 60(d)(3) "is higher and distinct from the more general standard for fraud under [Rule] 60(b)(3)." *Smiley*, 553 F.3d at 1144-45 (referencing *Hazel-Atlas Glass* as setting forth the principles pursuant to which a court exercises its inherent power, *see Hazel-Atlas Glass*, 322 U.S. at 244-248, 64 S. Ct. at 1000-02). The boundaries of the concept of "fraud upon the court" are strict. *See Kupferman*, 459 F.2d at 1078 (citing *Martina*, 278 F.2d at 801).

Thus, fraud on the court encompasses only that type of fraud which attempts to "defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kupferman*, 459 F.2d at 1078 (citing 7 MOORE, FEDERAL PRACTICE ¶ 60.33 at 515 & *Martina*, 278 F.3d at 801). The *Hazel-Atlas* case has been described as a case in which a judgment was set aside on motion primarily on the basis "that an attorney was implicated in perpetrating the fraud." *Kupferman*, 459 F.2d at 1078 (citing 7 MOORE, FEDERAL PRACTICE ¶ 60.33 at 513). As an officer of the court, a lawyer must deal with the court with honesty and integrity. *Id*. If a lawyer betrays this duty of loyalty to the court, the lawyer is deemed to have "perpetrate[d] a fraud upon the court." *Id*.

Further, the fraud, misrepresentation or conduct at issue must have been employed in an effort "to secure action of the court on the basis of [the fraudulent conduct]." *Hawkins v. Lindsley*, 327 F.2d 356, 359 (2d Cir. 1964). Thus, if the allegations show only fraud upon another party but not upon the court, it is not considered fraud upon the court within the "strict construction" that has been applied to that phrase. *See Simons*, 452 F.2d at 1116 n. 8. (citations omitted). Fraud on the court is "narrowly defined" as "directed to the judicial machinery itself;"

15

it is not fraud that takes place between the parties.  *Smiley*, 553 F.3d at 1144 (citations omitted).

The fraud, misrepresentation or conduct "'must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision.'"  *State Street*, 374 F.3d at 176 (quoting *Abatti v. C.I.R.*, 859 F.2d 115, 118 (9th Cir. 1988).  Further, the fraud, misrepresentation or conduct must have actually deceived the court.  *See Smiley*, 553 F.3d at 1145.  If a court's judgment was not influenced by the conduct at issue, the judgment should not be set aside.  *Id*. (noting that party's failure to disclose certain property interests did not influence the court's sentence).  While the influence does not necessarily have to be the primary basis for the ruling, it must be shown that the fraud, misrepresentation or conduct impressed, affected or influenced the court.[10]  *See Hazel-Atlas*, 322 U.S. at 246-47, 64 S. Ct. at 1001-02.  Moreover, because a party cannot fully and fairly present its case if the court has been improperly influenced, the standard applied to allegations of Rule 60(b)(3) fraud - that a party

---

[10]In *Hazel-Atlas*, in an effort to obtain a patent for a machine that utilized a certain method for pouring glass into molds, the officials and attorneys of the proponent company arranged to have a favorable article concerning the machine published in a law journal.  *See Hazel-Atlas*, 322 U.S. at 240, 64 S. Ct. at 998-99.  In furtherance of the plan, it was misrepresented that the article was authored by an expert in the field.  *Id*. at 240, 999.

Several months after the patent was obtained, the company sued another company for infringing on the patent.  *Id*. at 241, 999.  While the article was part of the record in the trial court, the patent holder did not rely on the article nor was there a reference to the article in the trial court's opinion dismissing the infringement action.  *Id*.  The dismissal, however, was appealed to the Third Circuit, before whom the company urged the article.  *Id*.  The circuit court reversed the dismissal quoting extensively from the article, and directed the trial court to enter a decree against the infringer.  *Id*. at 241-42, 64 S. Ct. at 999.

In a subsequent action brought by the alleged infringer to vacate the judgment against it, the circuit court denied the relief based, in part, upon the fact that the misrepresented article had not been the primary basis of the court's decision.  *Id*. at 244, 64 S. Ct. at 1000.  The Supreme Court reversed, finding that the influence of the article did not have to be the primary basis for the ruling.  *Id*. at 246-47, 64 S. Ct. at 1001-02.  The Supreme Court noted that the company and its lawyers urged the article on the court and prevailed, and that, although there was no way to accurately measure the degree to which the court was influenced by the article; nevertheless, because the company and its lawyers urged the article and prevailed, they could not "dispute its effectiveness."  *Id*.

Moreover, the Supreme Court did find that the circuit court was deceived by the wrongly-attributed article inasmuch as the Supreme Court asserted, with respect to the company having urged the article before the third circuit, that "[t]he reference was not without effect."  *Id*. at 241, 64 S. Ct. at 999.  The Supreme Court cited the Third Circuit's extensive quotations from the article, *Id*., as evidence that the article affected or influenced the court.  *Id*. at 246-47, 64 S. Ct. at 1001 (noting that "[w]hether or not it was the primary basis for that ruling, the article did impress the Court, as shown by the Court's opinion." ).

must be shown to have been precluded from fully and fairly representing its case - also applies in the context of a Rule 60(d)(3) motion for fraud on the court. *See State Street*, 374 F.3d at 176 (citation omitted).

Allegations that an opposing counsel mischaracterized the applicable law or the evidence submitted to the court "does not rise to the level of fraud on the court." *Weldon*, 2000 WL 1134358 at *2. Nor does fraud on the court apply when evidence that is discovered after the trial is conducted lends support to the belief that the judgment was obtained with perjured testimony. *Id.* (citation omitted). Any issues that may have been "addressed through the unimpeded adversary process" are not appropriately attacked on the basis of fraud upon the court. *Id.* (noting that during the action, movant's own counsel could have rebutted opposing counsel's characterization of the law and the record before the court); *see also Serzysko*, 461 F.2d at 702 (noting that the credibility of the witness in the original trial was directly at issue and the court considered the veracity of the differing accounts offered by such witnesses). However, fraud on the court may be present if a party inserts a false or forged document into the record. *See Weldon*, 2000 WL 1134358 at *2 (citing *Hazel-Atlas*, 322 U.S. at 246-47, 64 S.Ct. 1001-02).

Fraud on the court involves more than injury to an individual litigant. *See Weldon*, 2000 WL 1134358 at *2 (citation omitted). Such fraud is limited to the type of fraud that seriously affects the integrity of the adjudicatory process. Id. at *2 (citing *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1325 (2d Cir. 1995)). The heightened standard for fraud on the court would justify a finding of such fraud "only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury, or fabrication of evidence by counsel." *Smiley*, 553 F.3d at 1145 (citation omitted).

*Application of Law*

That portion of the Reconsideration Motion that argues that the Court should vacate, pursuant to Rule 60(b)(1), the Rejection Order and the Opinion supporting that order is premised upon the Movants' allegations that the Court overlooked factual matters and controlling decisions of law and, therefore, misapplied the law. While the Movants argue that their Rule 60(b)(1) motion is timely because Rule 60(c)(1) allows such motions to be brought within one year, the Movants ignore both the qualifying language of Rule 60(c)(1), which requires that the motion be brought within a "reasonable" time, and Second Circuit case law, which has determined that a reasonable time for bringing a motion under Rule 60(b)(1) that alleges a substantive mistake by the Court is the time frame for filing an appeal.

Here, the motion was filed more than six months after the entry of the Rejection Order and the Court's supporting Opinion. Certainly, all of the Movants' allegations concerning the Court's interpretation of the law, (*e.g.*, the business judgment test, including analysis of benefit to the estate), are substantive issues that could have been the subject of an appeal or a motion for re-argument under Federal Rule of Bankruptcy Procedure 9023, both of which have a time limitation.[11] In addition, all of the "separate and distinct controlling points of authority flowing from those cases" upon which the Movants assert they rely were also available to the Movants during the appeal period. The Movants received notice of the proceedings and had an opportunity to be heard and assert their arguments. Indeed, many of the Movants and the non-moving dealers participated in the proceedings. In addition, certain dealers filed a timely appeal,

---

[11]As previously noted, at the time this matter was decided, the relevant time frame for filing a motion for reargument under Fed. R. Bankr. P. 9023 was 10 days, which corresponded to the then-prevailing 10-day limit for filing a notice of appeal from a judgment, order or decree. *See* Fed. R. Bankr. P. 8002. (The 2009 amendments to the Federal Rules of Bankruptcy Procedure increased each of those time frames to 14-day periods.)

which was subsequently dismissed upon the appellant dealers' motion.

Moreover, pursuant to Fed. R. Bankr. P. 8002(a), if any party files a timely notice of appeal, any other party may be afforded additional time to file a notice of appeal, which runs from the date on which the first appeal notice was filed. Currently, the additional time to file an appeal after the initial appeal is 14 days; however, prior to the 2009 amendments, and relevant to the instant matter, that period was 10 days.

Furthermore, pursuant to Fed. R. Bankr. P. 8002(c)(2), a party may file a motion requesting an extension of time to file a notice of appeal. Ordinarily, the motion must be filed prior to the deadline for filing an appeal. However, upon a showing of excusable neglect, a court may grant a party's motion for an extension of up to 21 days if such motion is filed no later than 21 days after the deadline for filing a notice of appeal. (Prior to the December 2009 amendments, and relevant to the instant matter, that time frame was 20 days.)

The Movants' arguments for reconsideration stem from the Rejection Order or the Court's statements in the supporting Opinion. All of the information contained in those documents was available to the parties immediately upon the issuance of those documents. The Rejection Order was issued on June 9, 2009 and the supporting Opinion was issued on June 19, 2009. On June 19, 2009, certain dealers filed an appeal to the Rejection Order. Therefore, pursuant to Fed. R. Bankr. P. 8002(a), as then in effect, the Movants were afforded an additional 10 days from June 19, 2009 to file an appeal. Thus, even accepting their argument that footnote 21 caused them confusion, they had until June 29, 2009 to appeal. Moreover, the Movants could have availed themselves of Fed. R. Bankr. P. 8002(c)(2) and sought an extension of time to file an appeal but did not. The Movants did not act until more than six months after the issuance of

the Rejection Order and supporting Opinion. The Movants each had an opportunity to file a timely appeal. Having missed the deadline, they cannot use Rule 60(b)(1) as a way to circumvent that time restriction.

Further, the Movants had ample time to identify the points that they raise upon issuance of the Opinion. While the Movants argue that the Court overlooked certain facts and case law, they then cite to the Court's reference to the same facts and cases in the Court's Opinion. In other words, for the basis of what they allege the Court overlooked, the Movants cite to the Opinion itself. In substance, the Movants' argument is simply that they disagree with the Court's application of the relevant facts and case law to the matter at issue. Thus, the Reconsideration Motion is untimely because the asserted basis upon which the motion was filed was available to the Movants upon issuance of the Rejection Order and the Opinion.

More importantly, on June 9, 2009, the Movants knew the Court's ruling as set forth in the Rejection Order, and they knew the content of the record of the case. If the Movants believed that the ruling was inconsistent with the record, they should have appealed the Rejection Order at that time. The Court's subsequently issued Opinion, did not alter the content of the record upon which the Court's Opinion was based.

Nor do the facts in the instant matter call for the application of a court's "inherent power" to vacate or modify previously issued judgments or orders as described in *Texlon*, *Wayne* and *Pfister*. A motion brought to seek any such relief must be "seasonable" or "diligently" made. Here, as noted, the case law and the portion of the Court's Opinion with which the Movants take issue was available throughout the period during which the Movants could have asserted their appellate rights. Moreover, as noted, the Movants could have appealed the Rejection Order if

they believed it was inconsistent with the record.  Having missed the deadlines both for filing an

appeal and for filing a Fed. R. Bankr. P. 9023 motion for reargument, the Movants cannot ask

the Court to utilize its inherent power to allow them to circumvent those deadlines.  Moreover,

the Movants all received adequate and sufficient notice of the hearing concerning the motion to

reject the dealership agreements.  Additionally, the motion was well publicized and discussed

extensively in the earlier-conducted hearing concerning the sale of the Debtors' assets, in which

many of the dealers participated.  Thus, the Movants were given ample opportunity to participate

in the hearing concerning rejection of the dealership agreements and to present their position.  As

noted, many dealers did participate and it was a fully contested matter.  Any dispute with the

Court's interpretation should have been addressed by an appeal or by a Fed. R. Bankr. P. 9023

motion for reargument and subject to the relevant time restrictions.

The Movants assert that they brought the Reconsideration Motion within a reasonable

time considering "the immense record of the case, " the confusion that was allegedly caused by

the footnote with which they take issue, as well as the "complexities of bankruptcy law and the

immense discovery involved in this case."[12]

As previously noted, the Movants arguments stem from the Rejection Order or the

Court's statements in the supporting Opinion, which was available to the parties immediately

upon the issuance of those documents.  The Movants make conclusory statements regarding the

---

[12]The Movants make their arguments concerning reasonable time within the context of their Rule 60(b)(1)
motion alleging mistake by the court.  In support of that position, they site to *Pioneer Inv. Servs. v. Brunswick
Assocs.*, 507 U.S. 380 (1993), which they assert does not mention Rule 60(c) and indicates that a motion under Rule
60(b)(1) may be brought within one year.  *Pioneer*, however, dealt with a Rule 60(b)(1) motion based upon a party's
excusable neglect in failing to file a proof of claim within the time limit prescribed, whereas the instant matter
concerns allegations of judicial error.  The Court has already determined that the Second Circuit has established that
a reasonable time for filing a Rule 60(b)(1) motion alleging judicial error is the time frame permitted for an appeal.
*Vesco*, 556 F.2d at 670 (citing *Schildhaus*, 335 F.2d at 531).  Nevertheless, the Court addresses the reasonable time
issue as a component of its inherent power to reconsider an order.

extent of the record and discovery in this case without describing how either of those allegations impacted their ability to file an appeal. Indeed, this Court notes that an appeal was filed by other parties in interest, which appeal was subsequently dismissed upon the appellants' motion. Moreover, if the "immense" nature of either the record or the discovery was the cause of their delay or if it was engendered by their confusion over the footnote with which they take issue, there is no explanation as to why they did not take any steps to seek an extension of time within which to file an appeal as provided in Fed. R. Bankr. P. 8002.

In addition, the circumstances of the instant matter are unlike those present in the *Texlon* case where the court issued an *ex parte* financing order after conducting a rushed, very limited hearing at which affected parties did not have the opportunity to attend and express their viewpoints. Thus, the *Texlon* court did not have the benefit of those diverse viewpoints. Here, on the other hand, all the affected parties were provided with adequate and sufficient notice of the hearing concerning rejection of the dealer agreements and were afforded an opportunity to participate. Many dealers chose to participate, and this was a fully contested civil matter in which the parties' positions were presented.

Further, intervening rights will be prejudiced if the judgment is amended to grant the Movants the relief they seek. The rejection of the dealership agreements limited the estates' exposure to accruing administrative claims because the Debtors were no longer in the business of manufacturing automobiles. In reliance on the finality of the Rejection Order, the Debtors negotiated a budget with their lender for the wind-down of the cases to facilitate confirmation of a plan of reorganization (the "Plan"). Premised upon the expected size of the administrative claims, a Plan has been formulated and a disclosure statement related to that Plan approved by

the Court. Thus, the circumstances do not warrant reconsideration under the Court's inherent power.

The Movants also allege that there was a "fraud on the court," which is not subject to a time limitation. In that regard, the Movants argue that the Court misstated certain testimony made by a witness at the Rejection Hearing and thereby exhibited a reckless disregard for the truth. Specifically, the Movants maintain that, in footnote 21 of the Opinion, by quoting only the first sentence of a witness's response to a specific question during the hearing, the Court misstated the testimony. The Movants further argue that even though the second sentence contained in the response by the witness was referenced by the Court in footnote 18 of the Opinion, the parsing of the witness's testimony into "separate footnotes on two separate pages [gave] the appearance of two separate questions and two separate answers" and had a "devastating effect . . . on the record."

First, the Movants are incorrect that the Court's Opinion impacted the underlying record upon which the Court based its Opinion. That underlying record is what it is. If the Movants disagreed with the Court's characterization of the facts, the evidence, or the law, they had a ready avenue for redress in the ability to file an appeal to the Court's ruling. Any issues that may have been "addressed through the unimpeded adversary process" are not appropriately attacked on the basis of fraud upon the court. Thus, any allegation concerning a mischaracterization of fact, evidence or law, either by the opposing counsel or by the Court does not rise the level of fraud on the court.

This flows from the requirement, which applies in the context of a Rule 60(d)(3) motion for fraud on the court, that a party show that it has been precluded from fully and fairly

representing its case. As a party can refute its opposing counsel's characterization during the adversary process, it has an opportunity to fully and fairly present its case. In the same manner, a party can challenge a court's judgment or opinion by either filing an appeal or a timely motion for reargument. Therefore, such party has an opportunity to fully and fairly present its case and any alleged mischaracterization does not rise to the level of fraud on the court. Therefore, the Movants allegations do not constitute a fraud on the Court.[13]

Finally, the additional relief sought by the Movants in the Reconsideration Motion is not properly before the Court in the context of a motion for reconsideration. In that request, the Movants seek relief beyond reconsideration of the Court's Rejection Order and Opinion. A Rule 60 motion is not a basis upon which to seek relief that was not part of the original motion.[14]

## CONCLUSION

Based upon the foregoing, the Court concludes that the request for reconsideration, pursuant to Rule 60(b)(1), is untimely. The Court further concludes that application of the Court's inherent power to grant reconsideration is not warranted under the circumstances.

In addition, because the Movants' allegations do not rise to the level of fraud on the

---

[13]The Movants also allege that the Debtors committed fraud on the Court by mischaracterizing the record of the case in the Debtors' Objection to the Movants' Reconsideration Motion. If the Movants are raising the issue in the context of the Rejection Order or the Court's Opinion, the Objection came after the issuance of those two documents. Obviously, the Debtors' characterization of the record in the Objection could not have influenced the Court's judgment in issuing the Rejection Order and Opinion. Therefore, in that context, such representations are not a fraud on the Court. If the representations are raised in the context of the Reconsideration Motion, the Movants had an opportunity to refute any such characterizations in the context of the Motion to Reconsider and, therefore, the characterizations do not rise to the level of fraud on the Court.

[14]In addition, in the Movants' response to the Debtors' objection to the Reconsideration Motion, the Movants request that the Court strike footnote 13 of the Debtors' objection and further request that the Court order Debtors to resubmit their objection without footnote 13. Although a separate motion by Movants would have been the appropriate procedural means by which to address their request, the Court will treat the request as a motion. The Debtors are directed to file a response to such motion by February 17, 2010.

court, the request for reconsideration, pursuant to Rule 60(d)(3), should be denied.

Further, the additional relief sought by the Movants is not properly before the Court and such additional relief should be denied.

Thus, the Movants' Reconsideration Motion should be denied in its entirety.

An Order consistent with the Court's opinion denying the Reconsideration Motion is being entered contemporaneously herewith.

Dated: New York, New York
February 5, 2010

<u>**s/Arthur J. Gonzalez**</u>
CHIEF UNITED STATES BANKRUPTCY JUDGE