UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
:
In re : Chapter 11
:
Old Carco LLC : Case No. 09-50002 (AJG)
(f/k/a Chrysler LLC), *et al.,* :
: (Jointly Administered)
Debtors. :
:
:
----------------------------------------------------------------x

### ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE TWINSBURG, OHIO STAMPING PLANT, (II) APPROVING CERTAIN BIDDER PROTECTIONS AND (III) SCHEDULING A FINAL SALE HEARING AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF

This matter coming before the Court on the motion (Docket No. 6383) (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") seeking, pursuant to sections 105 and 363 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1 and 6004-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules"), entry of (i) an order (a) scheduling a hearing (the "Sale Hearing") to consider approving the sale of the Debtors' Twinsburg, Ohio stamping plant and certain related personal property (collectively, the "Property"), (b) authorizing and approving the procedures that are attached hereto as Exhibit A (the "Bidding Procedures") for the marketing and sale of the Property, including, but not limited to, the conduct of an auction (the "Auction") and the allowance of certain stalking-horse bidder protections, and (c) authorizing and approving the form and manner of the Debtors' proposed notice of the Auction and the Sale Hearing; and (ii) an order authorizing and approving the sale of the Property (the "Sale Transaction") to the

Successful Bidder in accordance with the Successful Bid (as such terms are defined in the Bidding Procedures) (the "Sale Order"); the Court having reviewed the Motion and the Limited Objection (Docket No. 6455) (the "Limited Objection") to the Motion filed by OmniSource Corporation ("OmniSource") on February 23, 2010, and conducted a hearing to consider the relief requested in the Motion (the "Hearing"); and the Court having considered the statements of counsel and the evidence presented at the Hearing;

IT IS HEREBY FOUND AND DETERMINED THAT:

A. The Debtors have articulated good and sufficient reasons for, and the best interests of their bankruptcy estates will be served by, this Court granting certain of the relief requested in the Motion, including approval of (1) the Bidding Procedures; (2) the break-up fee of $600,000 (the "Break-up Fee") as provided for in the Agreement of Purchase and Sale, dated as of February 12, 2010 (the "Purchase Agreement"),[1] between Twinsburg Industrial Park LLC, a Delaware limited liability company ("Buyer"), and Old Carco LLC f/k/a Chrysler LLC ("Old Carco"), which Purchase Agreement is attached as Exhibit A to the Motion; and (3) the form of notice attached hereto as Exhibit B (the "Sale Notice").

B. The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court scheduling a subsequent Sale Hearing to consider granting other relief requested in the Motion, including approval of the Sale Transaction and the transfer of the Property to the Successful Bidder free and clear of all Interests of any kind or nature pursuant to section 363(b) and section 363(f) of the Bankruptcy Code.

C. The Break-up Fee to be paid to the Buyer under the circumstances described is: (1) an actual cost and expense necessary to maximize the value of Debtors'

---

[1] Capitalized terms used but not defined herein have the meanings given to such terms in the Motion.

bankruptcy estates and, as such, is entitled to priority under sections 503(b) and 507(a)(2) of the of the Bankruptcy Code; (2) commensurate to the real and substantial benefits conferred upon the Debtors' bankruptcy estates by the Buyer; (3) reasonable and appropriate in light of the size and nature of the proposed Sale Transaction and comparable transactions, the commitments that have been made and the efforts that have been and will be expended by the Buyer; and (4) necessary to induce the Buyer to continue to pursue the Sale Transaction and to continue to be bound by the Purchase Agreement.

D. Moreover, unless it is assured that the Break-Up Fee will be available, the Buyer is unwilling to remain obligated to consummate the Sale Transaction or otherwise be bound under the Purchase Agreement (including the obligation to maintain its committed offer while such offer is subject to higher or otherwise better offers as contemplated by the Bidding Procedures). The Break-Up Fee induced the Buyer to submit a bid that will serve as a minimum or floor bid on which the Debtors, their creditors and other bidders can rely. The Buyer has provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible purchase price for the Property will be received. Accordingly, the Break-Up Fee is reasonable and appropriate and represents the best method for maximizing value for the benefit of the Debtors' estates.

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED to the extent set forth herein.

2. The Limited Objection is RESOLVED as set forth herein. The Debtors shall provide OmniSource and its counsel with prompt written notice of any Qualified Bid, Baseline Bid or Successful Bid (as such terms are defined in the Bidding Procedures, which are attached hereto as <u>Exhibit A</u>) that proposes to alter the treatment accorded to OmniSource in the Purchase Agreement.

3. The Bidding Procedures are hereby approved and shall govern all bids and bid proceedings relating to the Property. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

4. The deadline for submitting a Qualified Bid (as such term is defined in the Bidding Procedures) shall be March 5, 2010. The Purchase Agreement shall be deemed to be a Qualified Bid.

5. As further described in the Bidding Procedures, the Debtors shall conduct the Auction on March 10, 2010 if more than one Qualified Bid is timely received.

6. The Court shall conduct the Sale Hearing on March 11, 2010 at 10:00 a.m. (prevailing Eastern Time), at which hearing the Court will consider approval of the Sale Transaction to the Successful Bidder.

7. To be considered, objections to the proposed sale or any of the remaining relief sought in the Motion must (a) be in writing, (b) state the basis of such objection with specificity, (c) conform to the Bankruptcy Rules and the Local Bankruptcy Rules, (d) be filed with the Bankruptcy Court and (e) be served upon (i) counsel to the Debtors, Jones Day, 1420 Peachtree Street, N.E., Suite 800, Atlanta, Georgia 30309-3053 (Attn: Jeffrey B. Ellman, Esq.) and 901 Lakeside Avenue, North Point, Cleveland, Ohio 44114 (Attn: William Herzberger, Esq. and Carl E. Black, Esq.); (ii) counsel to the First Lien Agent, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 3954 (Attn: Peter V. Pantaleo, Esq.); (iii) counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers Mayer, Esq.) and (iv) counsel to the Buyer, Arnold & Porter LLP, 399 Park Avenue, New York, New York

10022-4690 (Attn: Michael J. Canning, Esq.) (collectively, the "Notice Parties"), so as to be actually received no later than 4:00 p.m. (prevailing Eastern Time) on March 10, 2010.

8. The Break-up Fee set forth in section 7 of the Purchase Agreement is hereby approved in all respects and shall be paid to the Buyer in accordance with and as provided in the Purchase Agreement. In accordance with section 7 of the Purchase Agreement, the Debtors' obligations to pay the Break-up Fee shall be treated as an administrative expense allowed under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code. The Buyer shall not waive the right to payment of the Break-up Fee by bidding or rebidding at the Auction. The Buyer's right to the Break-up Fee shall be the sole and exclusive remedy of the Buyer in the event of an Approved Alternative Transaction or Alternative Transaction, as applicable. In no event shall the Buyer be entitled to payment of the Break-up Fee unless and until the closing of an Approved Alternative Transaction or in accordance with section 7(d) of the Purchase Agreement, as applicable.

9. The form of the Sale Notice is hereby approved in all respects. All parties in interest shall receive or be deemed to have received good and sufficient notice of all relief sought in the Motion, including but not limited to the Sale Hearing, the proposed Approval Order, the proposed sale of the Property if:

> (a) no later than February 27, 2010 (the "Mailing Deadline"), the Debtors: serve the Sale Notice together with a copy of this Order by first-class mail, postage prepaid upon: (i) counsel to the Creditors' Committee; (ii) counsel to the First Lien Agent; (iii) counsel to the DIP Lenders; (iv) counsel to the Buyer; (v) any party who, in the past year, expressed in writing to the Debtors an interest in the Property; (vi) all parties who are known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in the Property; (vii) the Internal Revenue Service; (vii) the attorney general for the State of Ohio and all applicable local environmental enforcement agencies; (xi) all applicable state and local taxing authorities; (xii) the Office of the United States Trustee for the Southern District of New York; (xiii) the U.S. Environmental Protection Agency; (xiv) counsel to The Bank of New York Trust Company, N.A., in its capacity as the indenture trustee under that certain Indenture, dated

as of March 1, 1985, among DaimlerChrysler Company LLC (as predecessor in interest to Old Carco), as issuer, DaimlerChrysler AG (now known as Daimler AG), as guarantor and U.S. Bank National Association; and (xv) all entities that have requested notice in these chapter 11 cases under Bankruptcy Rule 2002; and

(b) as soon as practicable after the Mailing Deadline, the Debtors (i) shall publish the Sale Notice (modified as appropriate to accommodate publication) one time in the national edition of the *Wall Street Journal* and the *Cleveland Plain Dealer* and (ii) post the Sale Notice to the website of the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC, at www.chryslerrestructuring.com.

10. The failure of any objecting person or entity to timely file its objection shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, or the consummation and performance of the Sale Transaction contemplated by the Purchase Agreement or a Marked Agreement (as such term is defined in the Bidding Procedures), if any, including the transfer free and clear of all liens, claims, encumbrances and interests of the Property transferred as part of the Sale Transaction.

11. To the extent there is any inconsistency between the terms of this Order and the Purchase Agreement, the terms of this Order and the exhibits hereto shall control.

12. The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation, interpretation or enforcement of this Order.

Dated: New York, New York
      February 25, 2010      **s/Arthur J. Gonzalez**
                                    CHIEF UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

# BIDDING PROCEDURES[1]

## I.    Important Dates

The Debtors shall, in coordination with Capstone Advisory Group, LLC ("Capstone") and in consultation with and, with respect to the third item below, subject to the consent of JPMorgan Bank, N.A. (the "First Lien Agent"), as the agent for the Debtors' lenders under the Amended and Restated First Lien Credit Agreement, dated as of November 29, 2007, as amended:

(A)    assist Potential Bidders (as defined below) in conducting their respective due diligence investigations and accept Bids (as defined below) until 5:00 p.m. (prevailing Eastern Time) on March 5, 2010;

(B)    negotiate with Qualified Bidders (as defined below) in preparation for an auction (the "Auction") to begin at 10:00 a.m. (prevailing Eastern Time) on March 10, 2010 if any additional Qualified Bids are received; and

(C)    seek authority to sell the Property to the Successful Bidder (as defined below) at the Sale Hearing to be held by the Bankruptcy Court at 10:00 a.m. (Prevailing Eastern Time) on March 11, 2010.

## II.    The Sale Hearing

At the Sale Hearing, the Debtors will seek entry of an order substantially in the form of Exhibit E to the Motion, *inter alia*, authorizing and approving the Sale Transaction (A) if no other Qualified Bid (as defined below) is received by the Debtors, to the Buyer pursuant to the terms and conditions set forth in the Purchase Agreement or (B) if another Qualified Bid is received by the Debtors, to the Buyer or such other Qualified Bidder(s) as the Debtors, in the exercise of their reasonable business judgment and with the consent of the First Lien Agent, determine to have made the highest or otherwise best offer to purchase the Property at the Auction, consistent with the Bidding Procedures. The Sale Hearing may be adjourned or rescheduled without notice, other than by an announcement of such adjournment at the Sale Hearing or in an agenda letter for such hearing.

## III.    Determination by the Debtors

The Debtors, in coordination with Capstone and the First Lien Agent, shall (A) coordinate the efforts of Potential Bidders in conducting their respective due diligence investigations regarding the Property, (B) determine whether any person or entity is a Qualified

---

[1] Capitalized terms not otherwise defined herein shall have the respective meaning ascribed to them in the annexed Procedures Order.

Bidder, (C) receive bids from Qualified Bidders, (D) negotiate any bids and (E) conduct the Auction of the Property if any additional Qualified Bids are received (collectively, the "Bidding Process"). Any person or entity who wishes to participate in the Bidding Process must be a Qualified Bidder. Except as provided by applicable law or court order, neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Property to any person or entity who is not a Potential Bidder and who does not comply with the participation requirements below.

### IV. Participation Requirements

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process, each interested person or entity (a "Potential Bidder") must deliver the following (unless previously delivered) to: (A) Capstone Advisory Group, LLC, Park 80 West, 250 Pehle Avenue, Suite 105, Saddle Brook, New Jersey 07663 (Attn: John Rooney); (B) Jones Day, 1420 Peachtree Street, N.E., Suite 800, Atlanta, Georgia 30309-3053 (Attn: Jeffrey B. Ellman, Esq.) and 901 Lakeside Avenue, North Point, Cleveland, Ohio 44114 (Attn: William Herzberger, Esq. and Carl E. Black, Esq.); and (C) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017-3954 (Attn: Peter V. Pantaleo, Esq.) so as to be received no later than 5:00 p.m. (Prevailing Eastern Time) on March 1, 2010:

(A) an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors;

(B) a statement demonstrating to the Debtors' reasonable satisfaction a *bona fide* interest in purchasing all of the Property; and

(C) sufficient information, as requested by the Debtors, to allow the Debtors to determine that the Potential Bidder has the financial wherewithal and any required authorizations to close the Sale Transaction, including, but not limited to, current audited financial statements of the Potential Bidder (or such other form of financial disclosure acceptable to the Debtors in their discretion in consultation with the First Lien Agent).

### V. Due Diligence

If the Debtors determine, in consultation with the First Lien Agent, that a potential bidder has a *bona fide* interest in the Property, then no later than two business days after the Debtors make that determination and have received from a Potential Bidder all of the materials required above, the Debtors will contact any such Potential Bidder and offer such access or additional information as may be reasonably requested by the Potential Bidder that the Debtors, in their business judgment, determine to be reasonable and appropriate under the circumstances, subject to the limitations on the Debtors' access to the Property under the Transition Services Agreement, dated as of June 10, 2009, between the Debtors and Chrysler Group LLC. All due diligence requests shall be directed to John Rooney of Capstone at (201) 587-7121. The Debtors, with the assistance of Capstone, shall coordinate all reasonable requests for additional information and due diligence access from the Potential Bidders. In the event that any such due diligence material has not previously been provided to any other Potential Bidder, the Debtors

shall simultaneously provide such materials to all Potential Bidders, as well as to counsel to the First Lien Agent and counsel to the Buyer.

Unless otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease (A) if the Potential Bidder does not become a Qualified Bidder, (B) from and after the Bid Deadline or (C) if the Bidding Process is terminated in accordance with its terms.

## VI.     Bid Deadline

A Potential Bidder that desires to make a bid shall deliver written and electronic copies of its bid to: (A) Capstone Advisory Group, LLC, Park 80 West, 250 Pehle Avenue, Suite 105, Saddle Brook, New Jersey 07663 (Attn: John Rooney; jrooney@capstoneag.com); (B) Jones Day, 1420 Peachtree Street, N.E., Suite 800, Atlanta, Georgia 30309-3053 (Attn: Jeffrey B. Ellman, Esq.; jbellman@jonesday.com) and 901 Lakeside Avenue, North Point, Cleveland, Ohio 44114 (Attn: William Herzberger, Esq., wherzberger@jonesday.com, and Carl E. Black, Esq., ceblack@jonesday.com); and (C) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017-3954 (Attn: Peter V. Pantaleo, Esq.; ppantaleo@stblaw.com), so as to be received not later than 5:00 p.m. (Prevailing Eastern Time) on March 5, 2010 (the "Bid Deadline").

## VII.    Bid Requirements

A bid is a signed document from a Potential Bidder that provides, at a minimum, that:

(A)  the Potential Bidder offers to purchase the Property upon the terms and conditions set forth in a copy of an asset purchase agreement enclosed therewith, marked to show any proposed amendments and modifications to the Purchase Agreement (the "Marked Agreement");

(B)  the bid is not subject to any due diligence or financing contingency and is irrevocable until one business day following the closing of the Sale Transaction;

(C)  the purchase price in such bid is a higher or otherwise better offer for the Property than that described in the Purchase Agreement, and such offer shall not be considered a higher or better offer unless such bid provides for net cash (or cash equivalent) consideration to the Debtors of at least $750,000 more than the Purchase Price to be paid by the Buyer;

(D)  is a bid received by the Bid Deadline; and

(E)  does not entitle a bidder (other than the Buyer) to any break up fee, termination fee or similar type of payment or reimbursement.

A Potential Bidder shall accompany its bid with: (A) written evidence of available cash or an irrevocable commitment for financing and such other evidence of ability to consummate the transaction contemplated by the applicable Marked Agreement as the Debtors may reasonably request; (B) a copy of a board resolution or similar document demonstrating the

authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed; and (C) any pertinent factual information regarding the Potential Bidder's operations that would assist the Debtors in their analysis of issues arising with respect to any applicable antitrust laws.

A Potential Bidder must deposit 10% of the initial cash purchase price set forth in the Marked Agreement (the "Good Faith Deposit") with an escrow agent selected by the Debtors (the "Deposit Agent"). The Good Faith Deposit must be made by certified check or wire transfer and will be held by the Deposit Agent in accordance with the terms of an escrow agreement to be provided with the Purchase Agreement.

A bid received from a Potential Bidder that meets the above requirements will be considered a "Qualified Bid" and each Potential Bidder that submits a Qualified Bid will be considered a "Qualified Bidder." For purposes hereof, the Buyer is a Qualified Bidder and the Purchase Agreement executed by the Buyer is a Qualified Bid. A Qualified Bid will be valued based upon factors such as: (A) the purported amount of the Qualified Bid; (B) the fair value to be provided to the Debtors under the Qualified Bid; (C) the ability to close the proposed Sale Transaction without delay; and (D) any other factors the Debtors, in consultation with the First Lien Agent, may deem relevant. Within one business day after receipt from a Qualified Bidder, the Debtors shall distribute by email or facsimile a copy of each Qualified Bid to counsel to each Qualified Bidder (including the Buyer).

The Debtors reserve the right, with the consent of the First Lien Agent, to reject any bid if such bid:

(A) is on terms that are materially more burdensome or conditional than the terms of the Purchase Agreement;

(B) is a bid for less than all of the Property;

(C) requires any indemnification of such Qualified Bidder; or

(D) includes a non-cash instrument or similar consideration that is not freely marketable.

## VIII. Baseline Bid

Qualified Bidders that have submitted Qualified Bids are eligible to participate in the Auction. The Debtors will select, with the consent of the First Lien Agent, the highest and best Qualified Bid or Qualified Bids (the "Baseline Bid") to serve as the starting point for the Auction. As soon as practicable, the Debtors will provide all Qualified Bidders with a copy of the Baseline Bid.

## IX. Auction

If more than one Qualified Bid is received by the Bid Deadline, the Debtors will conduct the Auction. The Auction shall take place at 10:00 a.m. (Prevailing Eastern Time) on March 10, 2010, at the offices of Jones Day, located at 222 East 41st Street, New York, New York 10017, or such later time or such other place as the Debtors shall notify all Qualified

Bidders who have submitted Qualified Bids. Only a Qualified Bidder who has submitted a Qualified Bid will be eligible to participate at the Auction. Professionals for the First Lien Agent and the Creditors' Committee shall be able to attend and observe the Auction, <u>provided</u> <u>that</u> the professionals for the Creditors' Committee shall do so at their own expense and any such expenses shall not be a "Covered Cost" under the Agreed Order (Docket No. 5981) between the First Lien Agent and the Debtors (the "<u>First Lien Winddown Order</u>"). If no Qualified Bids other than the Buyer's Qualified Bid are received prior to the Bid Deadline, no Auction shall be conducted.

At the Auction, participants (including the Buyer) will be permitted to increase their bids and will be permitted to bid based only upon the terms of the Baseline Bid (except to the extent otherwise authorized by the Debtors, with the consent of the First Lien Agent), subject to Buyer's right to be credited in its bid for the amount of its Break-up Fee (as described below); <u>provided</u>, <u>however</u>, if the Buyer elects to participate in the Auction, the Buyer shall have the right, but shall not be obligated, to make any bid(s) at the Auction based on and subject to the terms and conditions set forth in the Purchase Agreement (other than the purchase price) and, in such case, the Debtors will weigh and consider any differences in any such terms and conditions set forth in the Purchase Agreement as compared to the terms and conditions set forth in the Baseline Bid in the Debtors' process of determining the Successful Bid (as defined herein). The bidding will start at the purchase price and terms proposed in the Baseline Bid, and continue in increments of at least $100,000. Notwithstanding any other provision of these Bidding Procedures, when comparing bids at the Auction, the Buyer will be credited with, and have added to the aggregate amount of any bid that the Buyer elects to make at the Auction, an amount equal to the Break-up Fee.

The Debtors may adopt, in consultation with the First Lien Agent, rules for the Auction at any time that will best promote the goals of the Bidding Process and that are not inconsistent with any provisions of the Purchase Agreement or these Bidding Procedures. Any such rules will provide that: (A) the procedures must be fair and open, with no participating Qualified Bidder disadvantaged in any material way as compared to any other Qualified Bidder; (B) all bids will be made and received in one room, on an open basis, and all other bidders will be entitled to be present for all bidding with the understanding that the true identity of each bidder will be fully disclosed to all other bidders and that all material terms of each Qualified Bid will be fully disclosed to all other bidders throughout the entire Auction; and (C) each Qualified Bidder will be permitted a fair, but limited, amount of time to respond to the previous bid at the Auction.

Immediately prior to the conclusion of the Auction, the Debtors, with the consent of the First Lien Agent, will: (A) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale Transaction; (b) identify the successful bid (the "<u>Successful Bid</u>") and (c) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the successful bidder or bidders (the "<u>Successful Bidder(s)</u>"), and the amount and other material terms of the Successful Bid. At the Sale Hearing, the Debtors shall present the Successful Bid to the Bankruptcy Court for approval.

## X. Acceptance of Qualified Bids

The Debtors may, with the consent of the First Lien Agent (A) determine, in their reasonable business judgment, which Qualified Bid is the Successful Bid and the next highest or otherwise best bid (the "Next Highest Bid"); and (B) reject at any time before entry of the Sale Order any bid that, in the Debtors' reasonable judgment, is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures or the terms and conditions of the Sale Transaction or (3) contrary to the best interests of the Debtors and their bankruptcy estates.

The Debtors presently intend to consummate the Sale Transaction with the Successful Bidder, whether such entity is the Buyer or another Qualified Bidder. However, the Debtors' presentation of the Successful Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of the bid. The Debtors will be deemed to have accepted the Successful Bid only when such bid has been approved by the Bankruptcy Court. The Debtors and the Successful Bidder shall close the Sale Transaction on or before March 31, 2010, unless extended by mutual agreement of the Debtors, the First Lien Agent and the Successful Bidder. If the Successful Bidder does not close the Sale Transaction by such date, then the Debtors shall be authorized, but not required, to close with the party that submitted the Next Highest Bid (the "Next Highest Bidder") without further order of the Bankruptcy Court, subject to the consent of the First Lien Agent. If the Debtors decide to close with the Next Highest Bidder, (A) the Debtors and the Next Highest Bidder shall have an additional 15 days to close and (B) the Next Highest Bidder shall be deemed the Successful Bidder within the meaning of these Bidding Procedures and under the Sale Order.

## XI. Modification of Procedures

If necessary to satisfy their fiduciary duties, the Debtors may, in consultation with the First Lien Agent and such other persons as the Debtors deem appropriate, amend these Bidding Procedures or the Bidding Process at any time in any manner that will best promote the goals of the Bidding Process, including extending or modifying any of the dates described herein; provided, however, that, to the extent that any such amendment impacts the protections granted to the Buyer in these Bidding Procedures and in the Purchase Agreement, such amendment shall be subject to the Buyer's consent, the giving of such consent not to be unreasonably withheld, conditioned or delayed.

## XII. Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders, and the Deposit (as defined in the Purchase Agreement) of the Buyer, shall be held in escrow by the Deposit Agent and shall not become property of the Debtors' bankruptcy estates absent further order of the Bankruptcy Court. The Deposit Agent shall retain the Deposit of the Buyer or the Good Faith Deposit of the Successful Bidder, as the case may be, until the earlier of the closing of the Sale Transaction or the termination or expiration of the applicable Marked Agreement or the Purchase Agreement, as the case may be. At the closing of the Sale Transaction contemplated by the Successful Bid, a Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit or, in the case of the Buyer, its Deposit. The Good Faith Deposits of all Qualified Bidders, other than the

Successful Bidder and the Next Highest Bidder, shall be released by the Debtors upon the entry of the Sale Order.  The Good Faith Deposits of the Successful Bidder and the Next Highest Bidder (if not applied to the Purchase Price at closing) shall be released by the Debtors upon the earlier of (A) the closing of the Sale Transaction or (B) the withdrawal of the Property for sale by the Debtors.  Additionally, if the Purchase Agreement is terminated, the Buyer's Deposit (as defined in the Purchase Agreement) shall be returned to the extent required by the Purchase Agreement.  Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon.  With respect to Good Faith Deposits, if (i) all conditions precedent to the Successful Bidder's or Next Highest Bidder's obligation to close the Transaction have been satisfied or waived, (ii) the Successful Bidder or the Next Highest Bidder has not terminated the applicable Marked Agreement or the Purchase Agreement, as the case may be, as may be permitted therein, (iii) the Debtors have performed their covenants and agreements under the applicable Marked Agreement or the Purchase Agreement, as the case may be and (iv) the Successful Bidder or the Next Highest Bidder has breached its covenants or agreements under the Marked Agreement or the Purchase Agreement, as the case may be, and has failed, refused or is unable to consummate the Transaction by the applicable closing date, the Debtors shall be entitled to the Good Faith Deposit as liquidated damages.  Any interest of the Debtors' estates in the Good Faith Deposits or the Deposit shall constitutes First Lien Collateral as that term is defined in the First Lien Winddown Order and shall be paid to the First Lien Agent in accordance with the terms of such Order.

**EXHIBIT B**