UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
: 
In re : Chapter 11
:
Old Carco LLC :
(f/k/a Chrysler LLC), *et al.*, : Case No. 09-50002 (AJG)
:
Debtors. : (Jointly Administered)
:
:
---------------------------------------------------------------x

# ORDER AUTHORIZING DEBTORS TO SELL TWINSBURG, OHIO STAMPING PLANT FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND GRANTING RELATED RELIEF

This matter coming before the Court on the motion, dated February 13, 2010 (Docket No. 6383) (the "Sale Motion"),[1] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an order pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1 and 6004-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York: (i) authorizing and approving the sale of the real and personal property comprising the Debtors' Twinsburg, Ohio stamping plant (collectively, as further defined in the Agreement (as such term is defined below), the "Property") to the Successful Bidder; (ii) authorizing and approving the sale by Debtor Old Carco LLC ("Old Carco") of the Property free and clear of all mortgages, security interests, conditional sale or other retention agreements, pledges, liens (as such term is defined in section 101(37) of the Bankruptcy Code), claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, guaranties, debts,

---

[1]  Capitalized terms used but not defined herein shall have the meanings given to such terms in the Sale Motion.

rights, contractual commitments, interests, judgments, demands, easements, charges, encumbrances, defects, options, rights of first refusal, encumbrances, Liens (as such term is defined in the Agreement) and restrictions of any kind or nature whether imposed by agreement, understanding, law, equity or otherwise, other than Permitted Liens as defined in the Agreement (collectively, the "Interests"); and (iii) granting certain related relief; an auction having been conducted in accordance with the Bidding Procedures on March 10, 2010 (the "Auction"); Maynards Industries (1991) Inc. (the "Buyer") having been selected by the Debtors, with the consent of the First Lien Agent, as the Successful Bidder; Twinsburg Industrial Park LLC having been selected by the Debtors, with the consent of the First Lien Agent, as the Next Highest Bidder at the Auction; the Court having conducted a hearing on the Sale Motion on March 11, 2010 (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Sale Motion; the Court having reviewed and considered, among other things, (i) the Sale Motion and the exhibits thereto, including the declaration of Peter Chadwick in support of the proposed sale of the Property (the "Chadwick Declaration"), (ii) the Agreement of Purchase and Sale (including all exhibits, schedules and ancillary agreements related thereto, the "Agreement"), dated March 10, 2010, by and between Old Carco and the Buyer, substantially in the form attached hereto as Exhibit A, whereby the Buyer has agreed to purchase, and Old Carco has agreed to sell, the Property for a cash purchase price of $45.5 million, (iii) the Court's prior order (Docket No. 6469), dated February 25, 2010 (the "Bidding Procedures Order"), approving competitive bidding procedures for the Property and (iv) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that the relief requested is in the best interests of the Debtors, their

estates and creditors and other parties in interest; and upon the record of the Sale Hearing and after due deliberation thereon and good cause appearing therefor:

**I.     FINDINGS OF FACT:**

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[2]

**Jurisdiction, Final Order and Statutory Predicates**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.      The Court has jurisdiction over this matter and over the property of the Debtors, including the Property to be sold, transferred or conveyed pursuant to the Agreement, and the Debtors' estates pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this case and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rule 6004(h), the parties may consummate the transactions provided for under the terms and conditions of the Agreement immediately upon entry of this Order.

**Appropriate Notice**

D.      As evidenced by the affidavits of service and publication filed with the Court: (1) proper, timely, adequate and sufficient notice of the Sale Motion, the Bidding Procedures Order (including the Bidding Procedures), the Sale Hearing and the Auction has been provided under the particular circumstances by the mailing of the Sale Motion and the mailing

---

[2] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. See Fed. R. Bankr. P. 7052.

and publication of the Sale Notice pursuant to the Bidding Procedures Order; and (2) no other or further notice of the Sale Motion, the Sale Hearing, the Bidding Procedures Order, the Bidding Procedures, the Auction or of the entry of this Order is necessary or shall be required.

### **Good Faith**

E.  The Buyer is a buyer in "good faith," as that phrase is used in section 363(m) of the Bankruptcy Code (and court decisions thereunder) and is entitled to the protections thereof. The Agreement was proposed, negotiated and entered into by the Buyer and Old Carco without collusion or fraud of any kind (including any conduct that would cause or permit the sale of the Property to be avoided under section 363(n) of the Bankruptcy Code), in good faith and from arm's length bargaining positions.

### **The Debtors' Business Judgment**

F.  <u>Initial Marketing Process</u>. The marketing process for the Property began around the time of the Fiat Transaction, with the Debtors receiving numerous indications of interest from various parties with respect to a potential purchase of the Property. In response to their solicitations of interest, the Debtors executed 16 non-disclosure agreements with interested parties and, as of October 16, 2009, had received seven letters of intent offering to purchase the Property. In consultation with JPMorgan Chase Bank, N.A., as the agent (the "<u>First Lien Agent</u>") under the Amended and Restated First Lien Credit Agreement, dated as of November 29, 2007 (as amended or modified, the "<u>First Lien Credit Agreement</u>"), by and among Carco Intermediate Holdco II LLC, Old Carco, the lender parties thereto (collectively, the "<u>First Lien Lenders</u>") and the First Lien Agent, the Debtors determined that the engagement of real estate brokers to market the Property was unnecessary. Pursuant to the First Lien Credit Agreement, and subject to the Permitted Liens, the First Lien Lenders have the first priority lien on the Property. During the period from October 2009 through January 2010, the Debtors

received offers from multiple purchasers, which offers (1) contained steadily increasing cash consideration and (2) were not subject to financing contingencies.

G. <u>The Stalking Horse Bid</u>. On January 29, 2010, a Non-Binding Letter of Intent/Offer was submitted on behalf of the Buyer to the Debtors, pursuant to which offer the Buyer (1) offered cash consideration well in excess of any previously-received offer, (2) offered to serve as the stalking horse bidder for the Property at auction and (3) sought certain bidding protections (as more particularly described in the Sale Motion, the "<u>Stalking Horse Bid</u>"). After negotiations between the Buyer and the Debtors, the Debtors determined that the Stalking Horse Bid was the most attractive offer for the Property and accepted the Stalking Horse Bid.

H. <u>The First Lien Lenders' Approval of the Stalking Horse Bid and Auction Process</u>. There are substantial carrying costs for property taxes, utilities, security and other expenses associated with the Property. These costs currently are borne by Chrysler Group LLC f/k/a New CarCo Acquisition LLC ("<u>New Chrysler</u>") under the Transition Services Agreement, dated June 10, 2009, between New Chrysler and Old Carco (the "<u>TSA</u>"). Because New Chrysler's obligation to pay these costs expires as of July 31, 2010, the Debtors may be forced to bear the entirety of these carrying costs in the next six months. Pursuant to paragraph 3 of the Agreed Order (Docket No. 5982) (the "<u>DIP Lender Winddown Order</u>") by and between the Debtors, the Debtors' debtor-in-possession lenders (collectively, the "<u>DIP Lenders</u>") and the Creditors' Committee, entered by the Court on November 19, 2009, the DIP Lenders, whose liens on the Property are junior to the liens securing the indebtedness under the First Lien Credit Agreement, are not funding any of the expenses associated with the sale of the Property (which Property is "First Lien Collateral" as such term is defined in the DIP Lender Winddown Order). These costs instead currently are being funded pursuant to the Agreed Order (Docket No. 5981)

(the "First Lien Winddown Order") by and between the Debtors and the First Lien Agent on behalf of the First Lien Lenders (i.e., the parties with the primary economic stake in the sale of the Property), entered by the Court on November 19, 2009, from the Reserve (as such term is defined in the First Lien Winddown Order).

I. In accordance with paragraph 7 of the First Lien Winddown Order, the Debtors have reviewed the sale process for the Property with the First Lien Agent and the First Lien Agent has (1) designated the Property as an "Estate Asset" (as such term is defined in the First Lien Winddown Order), (2) indicated to the Debtors that the First Lien Lenders have consented to the sale of the Property pursuant to the terms of the Agreement and (3) indicated to the Debtors that the First Lien Lenders (as the primary economic parties in interest) agreed that the sale of the Property ultimately be effected pursuant to the bidding procedures and auction process established in the Bidding Procedures Order.

J. Highest and Best Offer. On February 25, 2010, the Court entered the Bidding Procedures Order approving the Bidding Procedures for the Property. The Bidding Procedures provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Property. The Debtors conducted the Auction in accordance with the Bidding Procedures Order and complied with the Bidding Procedures Order in all respects. The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner. All Qualified Bidders, including the Buyer, were present at, and participated in, the Auction. The Buyer submitted the Successful Bid to the Debtors and complied with the Bidding Procedures Order in all respects. Twinsburg Industrial Park LLC submitted the Next Highest Bid to the Debtors and complied with the Bidding Procedures Order in all respects.

K. As demonstrated by the findings of fact recited herein and the testimony and other evidence proffered or adduced at the Sale Hearing (including the Chadwick Declaration): (1) the Debtors have adequately marketed the Property; (2) the consideration to be paid by the Buyer under the Agreement constitutes the highest and otherwise best offer for the Property, is fair and reasonable and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof or the District of Columbia; (3) the proposed sale to the Buyer will provide a greater recovery for the Debtors' estates (and the First Lien Lenders) than would be provided by any other practical available alternative; and (4) no other party has offered to purchase the Property for greater economic value to the Debtors or their estates.

L. The Buyer has provided the Debtors with a deposit in an amount equal to 10% of the initial cash consideration contemplated by the Agreement (such amount, together with the interest accrued thereon, the "Deposit"), which Deposit currently is being held by First American Title Insurance Company (the "Deposit Agent") in an interest-bearing account.

M. Accordingly, the decision of the Debtors to consummate the sale of the Property on the terms and conditions set forth in the Agreement represents a sound and reasonable exercise of the Debtors' business judgment where, among other things, the transaction will allow the Debtors to: (1) continue to implement the winddown of the Debtors' estates (consistent with the First Lien Winddown Order); (2) monetize the Property for the benefit of the Debtors' estates, including the First Lien Lenders (who are the primary economic party in interest); and (3) avoid incurring any carrying costs associated with the Property upon the expiration of the License Period. Moreover, given (1) the thorough marketing of the Property (as described herein, in the Sale Motion, in the Chadwick Declaration and at the Sale Hearing),

(2) the significant cash Purchase Price being offered by the Buyer and (3) the Buyer's willingness to promptly consummate the sale on an "as is, where is" basis, the Debtors believe that the sale of the Property will maximize value for their chapter 11 estates.

### Validity of Transfer

N.  Prior to the transactions contemplated under the Agreement, the Property, including, without limitation, the Scheduled Assets, is the property of the Debtors' estates, title thereto is vested in the Debtors' estates and Old Carco is the sole and lawful owner thereof, holding all right, title and interest therein.

O.  As of the Closing Date, the transfer of the Property to the Buyer will be a legal, valid and effective transfer of the Property and will vest the Buyer with all right, title and interest of the Debtors in and to the Property free and clear of all Interests of any kind or nature.

P.  Old Carco has full power and authority to execute the Agreement and all other documents contemplated thereby, the sale of the Property has been duly and validly authorized and Old Carco possesses all necessary corporate authority to consummate the transactions contemplated by the Agreement. No other consents or approvals, other than as may be expressly provided for in the Agreement, are required by Old Carco to consummate the transactions contemplated by the Agreement.

### Section 363(f) of the Bankruptcy Code is Satisfied

Q.  Except for the rights of New Chrysler under the TSA, Old Carco may sell the Property free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied. The First Lien Lenders have consented to the proposed sale of the Property hereunder within the meaning of section 363(f)(2) of the Bankruptcy Code. Moreover, other holders of Interests who did not object, or who withdrew their objections, to the sale of the Property and the

Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests, if any, attach to the proceeds of the sale of the Property.

R. The Buyer would not have entered into the Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates and their creditors, if the sale of the Property to the Buyer were not free and clear of all Interests of any kind or nature or if the Buyer would, or in the future could, be liable for any such Interests.

## No Successor Liability

S. The transactions contemplated under the Agreement do not amount to a consolidation, merger or *de facto* merger of the Buyer and any of the Debtors, there is no substantial continuity between the Buyer and the Debtors, there is no continuity of enterprise between the Debtors and the Buyer, the Buyer is not a mere continuation of the Debtors or the Debtors' estates and the Buyer does not constitute a successor to the Debtors or to the Debtors' estates.

T. The transfer of the Property to the Buyer shall not subject the Buyer or any of its affiliates or subsidiaries to any liability by reason of such transfer, including, without limitation, under (1) the laws of the United States, any state, territory or possession thereof, or the District of Columbia, based in whole or part on, directly or indirectly, including without limitation, any theory of antitrust, environmental, products liability, successor or transferee liability, labor law, *de facto* merger or substantial continuity; or (2) any employment contract, understanding or agreement, including, without limitation, collective bargaining agreements, employee pension plans or employee welfare or benefit plans.

### Retention of Jurisdiction

U.  It is necessary and appropriate for the Court to retain jurisdiction to, among other things, interpret and enforce the terms and provisions of this Order and the Agreement, and to adjudicate, if necessary, any and all disputes relating in any way to the transactions provided for under the terms and conditions of the Agreement.

**II.  CONCLUSIONS OF LAW:**

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.  The relief requested in the Sale Motion, to the extent not already granted or denied in the Bidding Procedures Order, is GRANTED, subject to the terms and conditions contained herein.

2.  All objections, if any, to the Sale Motion or the relief granted herein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits, except as expressly provided herein.

### Approval of Sale

3.  The Agreement, Old Carco's entry into the Agreement and the transactions contemplated thereby (including, to the extent necessary, the receipt of New Chrysler's consent to the assignment of Old Carco's rights and obligations under the TSA with respect to the Property) are hereby approved.  Pursuant to sections 105 and 363 of the Bankruptcy Code, Old Carco is authorized to perform its obligations under the Agreement.

4.  The Buyer is hereby granted and is entitled to all of the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code.  The sale of the

Property, and the Debtors' entry into the Agreement, may not be avoided, and costs may not be recovered or punitive damages awarded, pursuant to section 363(n) of the Bankruptcy Code.

5. Old Carco, as well as its affiliates, officers, managers, employees and agents, shall be, and hereby are, authorized and directed to fully assume, perform under, consummate and implement the terms of the Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement, this Order and the sale of the Property contemplated thereby, including, without limitation, the execution of any deeds, assignments and other instruments of transfer, and to take all further actions as may reasonably be requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession, any or all of the Property, as may be necessary or appropriate to the performance of Old Carco's obligations as set forth in the Agreement, without any further corporate action by Old Carco or orders of this Court.  Neither the Buyer nor the Debtors shall have any obligation to proceed with the Closing of the Agreement until all conditions precedent to their respective obligations to do so under the Agreement and this Order have been met, satisfied or waived.

6. The sale of the Property and the consideration provided by the Buyer under the Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

7. Effective as of the Closing, the sale of the Property by Old Carco to the Buyer shall constitute a legal, valid and effective transfer of the Property notwithstanding any requirement for approval or consent by any person and shall vest Buyer with all right, title and

interest of the Debtors in and to the Property, free and clear of all Interests, pursuant to section 363(b) and (f) of the Bankruptcy Code except for the rights of New Chrysler under the TSA.

**Transfer of Property Free and Clear**

8.  Pursuant to sections 105 and 363 of the Bankruptcy Code, except for the rights of New Chrysler under the TSA, the sale of the Property shall vest Buyer with all right, title and interest of the Debtors to the Property free and clear of any and all Interests, with all such Interests and any other liabilities and claims to attach only to the proceeds of the sale (if any) with the same priority, validity, force and effect, if any, as they now have in or against the Property, subject to all claims and defenses the Debtors may possess with respect thereto. Following the Closing Date, no holder of any Interest in the Property shall interfere with the Buyer's ownership, use and enjoyment of the Property based on or related to such Interest.

9.  To the greatest extent permitted under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of Old Carco with respect to the Property transferred pursuant to the Agreement, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date, provided, however, that nothing in the Agreement or this Order shall authorize the transfer of a permit or license without governmental approval where applicable nonbankruptcy law requires governmental approval of such transfer.

10. On or before the Closing Date, all parties holding Interests of any kind are authorized and directed to execute such documents and take all other actions as may be necessary to release any Interests of any kind against the Property, as such Interests may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements

or other documents or agreements evidencing any Interests in or against the Property shall not have delivered to Old Carco prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction or releases of all such Interests that the person or entity has with respect to the Property, Old Carco is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Property prior to the Closing, and the Buyer is authorized to execute and file such documents after Closing, <u>provided</u>, <u>however</u>, that nothing in this paragraph shall authorize Old Carco to execute or file documents on behalf of any governmental entity, the First Lien Lenders or the First Lien Agent.

11.     The Buyer is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Buyer, its affiliates and subsidiaries shall not assume, nor be deemed to assume, nor in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any successor liability or similar liability.  Neither the purchase of the Property by the Buyer or its affiliates or subsidiaries, nor the fact that the Buyer or its affiliates or subsidiaries are using any of the Property previously operated by the Debtors, will cause the Buyer or any of its affiliates or subsidiaries to be deemed a successor in any respect to the Debtors' businesses within the meaning of any foreign, federal, state or local revenue, pension, tax, labor, employment, environmental or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations and the Employee Retirement Income Security Act), or under any products liability law or doctrine with respect to the Debtors' liability under such law or doctrine, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law or doctrine, and the Buyer, its affiliates and subsidiaries shall have no liability or obligation on

account of any of the foregoing. Moreover, the Buyer shall not be deemed to: (a) be the successor of any of the Debtors or their estates, (b) have, *de facto* or otherwise, merged with or into any of the Debtors, (c) be a mere continuation or substantial continuation of the Debtors or the enterprise(s) of the Debtors, or (d) be liable for any acts or omissions of the Debtors in the conduct of the Debtors' businesses or arising under or related to the Property, and, to that end, the Buyers shall not be liable for any claims, written notices, causes of action, proceedings, complaints, investigations or other proceedings against the Debtors or any of their predecessors or affiliates, and the Buyer shall have no successor or vicarious liability of any kind or character whether known or unknown as of the Closing Date, whether now existing or hereafter arising, or whether fixed or contingent, with respect to the Property, the Debtors' businesses or any other obligations of the Debtors, including, without limitation, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Property and the Debtors' businesses.

12. Pursuant to sections 105 and 363 of the Bankruptcy Code, but subject to the rights of New Chrysler under the TSA, all persons and entities, including, but not limited to, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, any claimant asserting a products liability claim, trade and other creditors asserting or holding an Interest of any kind or nature whatsoever against, in or with respect to any of the Debtors or the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the Property, the operation of the Debtors' businesses prior to the Closing Date or the transfer of the Property to the Buyer, shall be forever barred,

estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Interest or other liability against the Buyer or any of its affiliates or subsidiaries. For the avoidance of doubt, nothing in this Order shall prevent the Debtors or their successors or permitted assigns from pursuing claims, if any, against the Buyer and/or its successors and assigns under, and in accordance with the terms of, the Agreement, including, but not limited to, the Environmental Indemnity.

13. Nothing in this Order or the Agreement releases, nullifies or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations (or any associated liabilities for penalties, damages, cost recovery or injunctive relief) that any entity would be subject to as the owner or operator of the Property after the date of entry of this Order; provided that nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not already exist under law.

14. Except in respect of the rights of New Chrysler under the TSA, all persons or entities, presently or on or after the Closing Date, in possession of some or all of the Property are directed to surrender possession of the Property to the Buyer on the Closing Date or at such time thereafter as the Buyer may request.

### Additional Provisions

15. Subject to the terms of the Agreement and the consent of the First Lien Agent, the Agreement may be modified, amended or supplemented by agreement of Old Carco and the Buyer without further action or order of the Court; <u>provided</u>, <u>however</u>, that any such modification, amendment or supplement does not materially change the terms of the Agreement or modify the express terms of this Order.

16. The net proceeds of the sale of the Property and other amounts owing to the Debtors' estates with respect to the sale of the Property, regardless of whether such sale

ultimately is consummated (including the Deposit to the extent it becomes property of the Debtors' estates pursuant to the terms of the Agreement), shall be paid by Old Carco to the First Lien Agent consistent with the terms of the First Lien Winddown Order.

17. The failure specifically to include any particular provisions of the Agreement or any related Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, Old Carco and the Buyer that the Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing. To the extent that any provisions of this Order conflict with the terms and conditions of the Agreement, the terms and conditions of this Order shall govern and control.

18. This Order and the Agreement, as applicable, shall be binding upon, may be enforced against and shall govern the acts of all Persons and entities, including without limitation, the Debtors and the Buyer, their respective successors and permitted assigns, including, without limitation, any successor trustee hereinafter appointed for the Debtors' estates (including but not limited to the Liquidation Trust established pursuant to the Plan), New Chrysler, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state and all other persons and entities who may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Property. Each and every federal, state and local governmental agency, unit or department is hereby directed to accept this Order as sole and sufficient evidence of the transfer of title of the Property to the Buyer, and such agency, unit or department may rely

upon this Order in consummating the transactions contemplated by the Agreement.  This Order may be recorded by the Buyer in any registry or government office.

19. If the Debtors close a transaction for the sale of the Property with the Next Highest Bidder as contemplated by the Bidding Procedures Order, the terms and provisions of this Order shall be applicable to, and govern, such transaction as if the Next Highest Bidder was the Successful Bidder and Buyer without further order of the Court or notice to any party in interest.

20. As provided by Bankruptcy Rule 6004(h), this Order shall be effective immediately upon entry.

21. This Court retains jurisdiction to interpret, implement and enforce the terms and provisions of this Order, including to compel delivery of the Property, to protect the Buyer against any Interest and to enter any orders under sections 105 or 363 (or other applicable provisions) of the Bankruptcy Code necessary or appropriate to transfer the Property to the Buyer.

Dated: March 11, 2010
      New York, New York

                                        **s/Arthur J. Gonzalez**
                                        CHIEF UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT A**