**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
In re : 
 : Chapter 11
 : 
Old Carco LLC : 
(f/k/a Chrysler LLC), *et al.*, : Case No. 09-50002 (AJG)
 : 
 Debtors. : (Jointly Administered)
 : 
 : 
---------------------------------------------------------------x

**ORDER (I) AUTHORIZING DEBTORS TO SELL THEIR STERLING HEIGHTS, MICHIGAN ASSEMBLY PLANT FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, (II) APPROVING CERTAIN ANCILLARY AGREEMENTS, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN RELATED AGREEMENTS AND (IV) GRANTING RELATED RELIEF**

This matter coming before the Court on the motion, dated February 18, 2010 (Docket No. 6444) (the "Sale Motion"),[1] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an order pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1, 6004-1 and 6006-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York: (i) authorizing and approving the entry by Debtor Old Carco LLC (f/k/a Chrysler LLC) ("Old Carco") into that certain Agreement of Purchase and Sale, dated as of February 18, 2010, between Chrysler Group LLC (f/k/a New CarCo Acquisition LLC) (the "Buyer") and Old Carco in the form attached hereto as Exhibit 1 (the "Purchase Agreement"), whereby Old Carco has agreed to sell to the Buyer certain property associated with the Debtors' Sterling Heights, Michigan assembly plant (as more specifically defined in the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Sale Motion.

Purchase Agreement, the "Property"); (ii) authorizing and approving the sale by Old Carco of the Property free and clear of all mortgages, security interests, equitable interests, conditional sale or other retention agreements, pledges, liens (as such term is defined in section 101(37) of the Bankruptcy Code), including the Identified Liens (as defined in the Purchase Agreement), claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, guaranties, debts, rights, contractual commitments, interests, judgments, demands, rights of way, easements, encroachments, charges, encumbrances, defects, options, rights of first refusal, transfer, receipt of income or any other attributes of ownership, and restrictions of any kind or nature whether imposed by agreement, understanding, law, equity or otherwise, excluding only the Permitted Liens (as such term is defined in the Purchase Agreement) (all of the above, excluding only the Permitted Liens, are collectively referred to herein as the "Interests"); (iii) authorizing and approving Old Carco's entry into (A) the Amendment No. 3 to Transition Services Agreement (the "TSA Amendment"), to be executed as of the Closing Date, between Old Carco and the Buyer in the form attached to the Purchase Agreement as Exhibit B, and (B) the Intellectual Property License Agreement (the "License" and, together with the TSA Amendment, the "Ancillary Agreements"), to be executed as of the Closing Date, between Old Carco and the Buyer in the form attached to the Purchase Agreement as Exhibit D, which Ancillary Agreements serve as additional consideration provided by the Buyer in connection with the sale of the Property; (iv) authorizing the assumption, and assignment to Buyer, of (A) that certain Utility Services Agreement, dated as May 24, 2004 (as amended, the "Utility Services Agreement"), between DTE Energy Center, LLC ("DTE") and Debtor Utility Assets LLC ("Utility Assets"), (B) that certain Easement Agreement, dated as of May 17, 2004 (the "Easement Agreement" and, together with the Utility Services Agreement, the "DTE

Agreements"), between DTE and Old Carco (as successor in interest to DaimlerChrysler Corporation) and (C) that certain Natural Gas Exploration, Production and Sale Agreement, dated August 20, 1991 (as amended, the "Natural Gas Agreement" and, collectively with the DTE Agreements, the "Assigned Agreements"), between Old Carco (as successor in interest to Chrysler Corporation) and West Bay Exploration Company; and (v) granting certain related relief; the Court having conducted a hearing on the Sale Motion on March 11, 2010 (the "Sale Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Sale Motion; the Court having reviewed and considered, among other things, (i) the Sale Motion and the exhibits thereto (including the declaration of Peter Chadwick in support of the proposed sale of the Property); (ii) the Purchase Agreement (including the Ancillary Agreements attached as exhibits thereto); and (iii) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing;

## I. FINDINGS OF FACT:

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[2]

### Jurisdiction, Final Order and Statutory Predicates

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B. The Court has jurisdiction over this matter and over the property of the Debtors, including the Property to be sold, transferred or conveyed pursuant to the Purchase Agreement, and the Debtors' estates pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a

---

[2] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. See Fed. R. Bankr. P. 7052.

core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this case and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the parties may consummate the transactions provided for under the terms and conditions of the Purchase Agreement and the Ancillary Agreements immediately upon entry of this Order.

### Notice of the Sale Motion

D. As evidenced by the affidavits of service filed with the Court: (1) proper, timely, adequate and sufficient notice of the Sale Motion and the Sale Hearing has been provided under the particular circumstances by the mailing of the Sale Motion; and (2) no other or further notice of the Sale Motion, the Sale Hearing or of the entry of this Order is necessary or shall be required.

### Good Faith

E. The Buyer is a buyer in "good faith," as that phrase is used in section 363(m) of the Bankruptcy Code (and court decisions thereunder) and is entitled to the protections thereof. The Purchase Agreement and the Ancillary Agreements were proposed, negotiated and entered into by the Buyer and Old Carco without collusion or fraud of any kind (including any conduct that would cause or permit the sale of the Property, the Purchase Agreement or the Ancillary Agreements to be avoided, costs to be recovered or punitive damages to be awarded under section 363(n) of the Bankruptcy Code), in good faith and from arm's length bargaining positions.

### The Debtors' Business Judgment

F. Pursuant to the Transition Services Agreement, by and between Old Carco and the Buyer, dated June 10, 2009 (as it may have been, or may be, amended or supplemented

from time to time, the "TSA"), the Buyer (1) is entitled to use the Property through April 30, 2011 (the "License Period") and (2) since the Closing Date (as such term is defined in the TSA), has been conducting, and currently conducts, operations at the Property.

G. The Debtors began preparations for the ultimate disposition of the Property in November 2009, at which time the Debtors were conducting preliminary negotiations with real estate brokers with respect to the necessary marketing of the Property and offering tours of the Property to a limited number of interested parties. Shortly after the commencement of these efforts, the Debtors learned that the Buyer had expressed an interest in continuing to manufacture and sell certain vehicle models that historically had been manufactured and assembled at the Property — i.e., the Chrysler Sebring and the Dodge Avenger (together, the "Vehicles"). This interest was confirmed on November 4, 2009 when the Buyer made public its "five-year plan" for profitability, which contemplated the continuing manufacture of the Vehicles.

H. Following the release of the Buyer's five-year plan in November 2009, the Debtors contacted the Buyer to determine its specific intentions with respect to the Property. The Buyer indicated its interest in either (1) extending the License Period beyond April 30, 2011 or (2) purchasing the Property. Although the Debtors were not interested in an extension of the License Period, the Debtors and the Buyer began negotiating a potential sale of the Property in November 2009, which negotiations ultimately produced the Purchase Agreement and the related Ancillary Agreements. The Buyer's agreement to enter into the Ancillary Agreements was a key factor in the Debtors' decision to consummate the Transaction.

I. The $20 million purchase price to be paid by the Buyer under the Purchase Agreement together with the substantial non-monetary consideration represented by the Buyer's

entry into the Ancillary Agreements (which agreements enhance the marketability of certain real property and related equipment and improvements owned by Old Carco) exceed the Debtors' previously-received estimates for the net proceeds expected pursuant to a sale of the Property. Specifically, in connection with the Debtors' preliminary negotiations with real estate brokers regarding the marketing and disposition of the Property, the Debtors received estimates of the gross proceeds recoverable by the Debtors in connection with a sale of the Property within a range of $8.5 million to $21 million (with the net proceeds recoverable necessarily falling short of such estimates). The Debtors have received no letters of intent from any party other than the Buyer indicating an interest in the purchase of the Property.

J. No brokers were involved in consummating the transactions contemplated by the Purchase Agreement or the Ancillary Agreements, and no brokers' commissions are due to any person in connection with the transactions described in this Order.

K. Pursuant to paragraph 3 of the Agreed Order (Docket No. 5982) (the "DIP Lender Winddown Order") by and between the Debtors, the Debtors' debtor-in-possession lenders (collectively, the "DIP Lenders") and the Creditors' Committee, entered by the Court on November 19, 2009, the DIP Lenders acknowledge that their liens on the Property are junior to the liens securing the indebtedness under the First Lien Credit Agreement and are not funding any of the expenses associated with the sale of the Property (which Property is "First Lien Collateral" as such term is defined in the DIP Lender Winddown Order). Instead, these costs currently are being funded pursuant to the Agreed Order (Docket No. 5981) (the "First Lien Winddown Order") by and between the Debtors and the First Lien Agent on behalf of the First Lien Lenders (i.e., the parties with the primary economic stake in the sale of the Property),

entered by the Court on November 19, 2009, from the Reserve (as such term is defined in the First Lien Winddown Order) established from the First Lien Lenders' collateral.

L.   In accordance with paragraph 7 of the First Lien Winddown Order, the Debtors have reviewed the substance of their negotiations with respect to the sale of the Property and the terms of the Purchase Agreement with the First Lien Agent, and the First Lien Agent has (1) designated the Property as an "Estate Asset" (as such term is defined in the First Lien Winddown Order), (2) indicated to the Debtors that the First Lien Lenders have consented to the sale of the Property pursuant to the terms of the Purchase Agreement, (3) indicated to the Debtors that the First Lien Lenders believe the consideration received for the Property to be appropriate and (4) indicated to the Debtors that the First Lien Lenders (as the primary economic parties in interest) prefer that the sale of the Property to the Buyer be consummated without an auction to avoid any delay and costs associated therewith and to provide the certainty of a near-term sale.

M.   The decisions of the Debtors to enter into (1) the Purchase Agreement, which provides for the private sale of the Property to the Buyer, and (2) the Ancillary Agreements, which provide the Debtors with substantial consideration in connection with the sale of the Property, represent sound and reasonable exercises of the Debtors' business judgment. Among other things, the Debtors have determined in their business judgment that the benefits of consummating a prompt private sale of the Property on the terms and conditions set forth in the Purchase Agreement outweigh any potential benefits of conducting a further marketing and overbid process for the Property where (1) the First Lien Lenders, as the primary economic parties in interest, have indicated to the Debtors their preference that the Debtors' estates not incur any further marketing costs with respect to the Property, (2) the Debtors have no agreement

with the DIP Lenders or any other party to fund the costs that would be incurred by the Debtors' estates in connection with a further marketing process, (3) the consideration to be received in exchange for the Property (i.e., the $20 million cash Purchase Price and the substantial non-monetary consideration provided pursuant to the Ancillary Agreements) exceeds the preliminary estimates of the Property's value received by the Debtors and (4) the extended License Period with respect to the Property (i.e., until April 30, 2011) otherwise serves to decrease the Property's immediate marketability to other potential purchasers. Moreover, the Debtors have determined that (1) Old Carco's prospective ability to assign the Buyer's obligations under the TSA with respect to Owned Premises (as such term is defined in the TSA) to prospective purchasers of such premises, which ability is granted pursuant to the TSA Amendment, and (2) the Buyer's agreement to grant Old Carco a non-exclusive license to use certain intellectual property related to the manufacture of certain engines, as set forth in the License, provide Old Carco's bankruptcy estate with substantial value by enhancing the marketability of certain real property and related improvements owned by Old Carco.

N.  Accordingly, under the circumstances, the private sale of the Property on the terms and conditions set forth in the Purchase Agreement maximizes the value of the Property for the Debtors' estates.

**Validity of Transfer**

O.  Prior to the transactions contemplated under the Purchase Agreement, the Property is the property of the Debtors' estates and title thereto is vested in the Debtors' estates.

P.  Old Carco has full power and authority to execute the Purchase Agreement and all other documents contemplated thereby (including the Ancillary Agreements), the sale of the Property has been duly and validly authorized and Old Carco possesses all necessary corporate authority to consummate the transactions contemplated by the Purchase

Agreement. No other consents or approvals, other than as may be expressly provided for in the Purchase Agreement, are required by Old Carco to consummate the transactions contemplated by the Purchase Agreement.

### Section 363(f) of the Bankruptcy Code is Satisfied

Q. Except as may otherwise be provided in the Purchase Agreement or this Order, Old Carco may sell the Property free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied. The First Lien Lenders have consented to the proposed sale of the Property hereunder within the meaning of section 363(f)(2) of the Bankruptcy Code. Moreover, other holders of Interests who did not object, or who withdrew their objections, to the sale of the Property and the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests, if any, attach to the proceeds of the sale of the Property.

### Assumption and Assignment of the Assigned Agreements

R. The assumption and assignment of the Assigned Agreements are integral to the Purchase Agreement, are in the best interests of the Debtors and their bankruptcy estates and represent the reasonable exercise of the Debtors' sound business judgment. There are no outstanding defaults under the Assigned Agreements and, thus, no amounts need be paid to the counterparties thereto as cure in connection with the assumption of the Assigned Agreements pursuant to section 365(b) of the Bankruptcy Code, the requirements of which have been satisfied. Further, the Buyer has provided adequate assurance of future performance under the Assigned Agreements in satisfaction of sections 365(b) and 365(f) of the Bankruptcy Code.

Accordingly, the Assigned Agreements can be assumed by the Debtors and assigned to the Buyer, as provided for in the Sale Motion and the Purchase Agreement.

**Retention of Jurisdiction**

S.  It is necessary and appropriate for the Court to retain jurisdiction to, among other things, interpret and enforce the terms and provisions of this Order and the Purchase Agreement, and to adjudicate, if necessary, any and all disputes relating in any way to the transactions provided for under the terms and conditions of the Purchase Agreement.

II.  **CONCLUSIONS OF LAW:**

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.  The relief requested in the Sale Motion is granted in its entirety, subject to the terms and conditions contained herein.

**Approval of Sale**

2.  The Purchase Agreement and all exhibits affixed thereto (including, but not limited to, the Ancillary Agreements), Old Carco's entry into the Purchase Agreement and the transactions contemplated thereby (including, but not limited to, Old Carco's entry into the Ancillary Agreements) are hereby approved.  Pursuant to sections 105 and 363 of the Bankruptcy Code, Old Carco is authorized and directed to perform its obligations under the Purchase Agreement and all exhibits affixed thereto (including, but not limited to, the Ancillary Agreements).

3.  The Buyer is hereby granted and is entitled to all of the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code.

4.  Old Carco shall be, and hereby is, authorized and directed to fully assume, perform under, consummate and implement the terms of the Purchase Agreement together with

any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Purchase Agreement, this Order and the sale of the Property contemplated thereby including, without limitation, the execution of and performance under the Ancillary Agreements, the execution of any deeds, assignments and other instruments of transfer, and to take all further actions as may reasonably be requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession any or all of the Property, as may be necessary or appropriate to the performance of Old Carco's obligations as set forth in the Purchase Agreement, without any further corporate action by Old Carco or orders of this Court. The Buyer shall have no obligation to proceed with the closing of the Purchase Agreement until all conditions precedent to its obligation to do so under the Purchase Agreement have been met, satisfied or waived.

5. The sale of the Property and the consideration provided by the Buyer under the Purchase Agreement (including the Buyer's entry into the Ancillary Agreements) is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law. The sale of the Property, and the Debtors' entry into the Purchase Agreement and the Ancillary Agreements, may not be avoided, and costs may not be recovered or punitive damages awarded, pursuant to section 363(n) of the Bankruptcy Code.

6. Effective as of the Closing Date, the sale of the Property by Old Carco to the Buyer shall constitute a legal, valid and effective transfer of the Property, notwithstanding any requirement for approval or consent by any person and shall vest the Buyer with all right, title and interest of the Debtors in and to the Property, free and clear of all Interests of any kind, pursuant to section 363(f) of the Bankruptcy Code.

## Transfer of Property Free and Clear

7.  Pursuant to sections 105 and 363 of the Bankruptcy Code, the sale of the Property shall vest Buyer with all right, title and interest of the Debtors to the Property free and clear of any and all Interests, with all such Interests and any other liabilities and claims to attach only to the proceeds of the sale (if any) with the same priority, validity, force and effect, if any, as they now have in or against the Property, subject to all claims and defenses the Debtors may possess with respect thereto. Following the Closing Date, no holder of any Interests in the Property shall interfere with the Buyer's use and enjoyment of the Property based on or related to such Interests.

8.  To the greatest extent permitted under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of Old Carco with respect to the Property transferred pursuant to the Purchase Agreement, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date, *provided*, *however*, that nothing in the Purchase Agreement or this Order shall authorize the transfer of a permit or license without governmental approval where applicable nonbankruptcy law requires governmental approval of such transfer.

9.  On or before the Closing Date, all parties holding Interests of any kind are authorized and directed to execute such documents and take all other actions as may be necessary to release any Interests of any kind against the Property, as such Interests may have been recorded or may otherwise exist. If any person or entity that has filed financing statements or other documents or agreements evidencing any Interests in or against the Property shall not have delivered to Old Carco prior to the Closing Date after request therefor, in proper form for

filing and executed by the appropriate parties, termination statements, instruments of satisfaction or releases of all such Interests that the person or entity has with respect to the Property, Old Carco is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Property prior to the Closing Date, and the Buyer is authorized to execute and file such documents after the Closing Date; provided, however, that nothing in this paragraph shall authorize Old Carco to execute or file documents on behalf of the First Lien Lenders or the First Lien Agent (unless the First Lien Agent so consents) or any governmental entity.

10. All persons and entities, including, but not limited to, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, any claimant asserting a products liability claim, trade and other creditors asserting or holding an Interest of any kind or nature whatsoever against or in the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) shall be forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Interest against the Buyer or any of its affiliates or subsidiaries; provided, however, the foregoing shall not prevent the Debtors or their successors or permitted assigns from pursuing claims, if any, against the Buyer and/or its successors and assigns in accordance with the terms of the Purchase Agreement, the Ancillary Agreements, the TSA, the MTA or other agreements.

11. Nothing in this Order or the Purchase Agreement releases, nullifies or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations (or any associated liabilities for penalties, damages, cost recovery or

injunctive relief) that any entity would be subject to as the owner or operator of the Property after the date of entry of this Order. Nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not already exist under law.

12. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Purchase Agreement or the Ancillary Agreements.

13. Except (a) as expressly provided otherwise in the Purchase Agreement or this Order and (b) in connection with Permitted Liens, all persons or entities, presently or on or after the Closing Date, in possession of some or all of the Property are directed to surrender possession of the Property to the Buyer on the Closing Date or at such time thereafter as the Buyer may request.

**Assumption and Assignment of the Assigned Agreements**

14. Pursuant to sections 105(a) and 365 of the Bankruptcy Code, the Debtors' assumption, and assignment to the Buyer, of the Assigned Agreements is hereby approved, and all requirements of section 365 of the Bankruptcy Code are hereby deemed satisfied.

15. The Assigned Agreements shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in the Assigned Agreements that prohibits, restricts or conditions such assignment or transfer (including those of the type described in sections 365(e)(1) and (f) of the Bankruptcy Code). There shall be no assignment fees, increases or any other fees charged to the Buyer or the Debtors as a result of the assumption or assignment of the Assigned Agreements. The Assigned Agreements may not be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" or anti-assignment clauses, by any other party thereto as a result of the transactions contemplated by the Purchase Agreement.

16. All non-Debtor counterparties to the Assigned Agreements hereby are forever barred, estopped and permanently enjoined from asserting against the Debtors or the Buyer, their successors or assigns or the property of any of them, any default under the Assigned Agreements existing as of the date of the Sale Hearing if such default was not raised or asserted prior to or at the Sale Hearing. The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of the Assigned Agreements shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Assigned Agreements.

17. Upon the Closing, the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assigned Agreements.

### **Additional Provisions**

18. Subject to the terms of the Purchase Agreement, the Purchase Agreement may be modified, amended or supplemented by agreement of Old Carco and the Buyer without further action or order of the Court; *provided*, *however*, that any such modification, amendment or supplement does not materially change the terms of the Purchase Agreement or modify the express terms of this Order.

19. The failure specifically to include any particular provisions of the Purchase Agreement or any related agreement (including, but not limited to, the Ancillary Agreements) in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court, Old Carco and the Buyer that the Purchase Agreement and any related agreements (including, but not limited to, the Ancillary Agreements) are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to the Closing Date. To the extent that any provisions of this

Order conflict with the terms and conditions of the Purchase Agreement, the terms and conditions of this Order shall govern and control.

20.     This Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Property or a bill of sale transferring good and marketable title in the Property to Purchaser and this Order, the Purchase Agreement and any related agreements (including, but not limited to, the Ancillary Agreements), as applicable, shall be binding upon, may be enforced against and shall govern the acts of all Persons and entities, including without limitation, the Debtors and the Buyer, their respective successors and permitted assigns and any affiliates or subsidiaries thereof (including, without limitation, any successor trustee, examiner, "responsible person" or other fiduciary appointed for the Debtors' estates), all creditors and equity holders of any Debtor (whether known or unknown), filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, recording agencies, secretaries of state and all other persons and entities who may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Property.  Each and every federal, state and local governmental agency, unit or department is hereby directed to accept this Order as sole and sufficient evidence of the transfer of title of the Property to the Buyer, and such agency, unit or department may rely upon this Order in consummating the transactions contemplated by the Purchase Agreement.  This Order may be recorded by the Buyer in any registry or government office.

21.     Nothing contained in any plan confirmed in these chapter 11 cases, any order of the Bankruptcy Court confirming such plan or any other order entered in these

chapter 11 cases (or any subsequent chapter 7 case) shall be deemed to modify the provisions of the Purchase Agreement or the Ancillary Agreements or the terms of this Order.

22. As provided by Bankruptcy Rules 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry.

23. This Court retains jurisdiction to interpret, implement and enforce the terms and provisions of this Order, the Purchase Agreement and all amendments thereto, any waivers and consents thereunder and any agreements executed in connection therewith in all respects, including to compel delivery of the Property, to protect the Buyer against any Interest and to enter any orders under sections 105 or 363 (or other applicable provisions) of the Bankruptcy Code necessary or appropriate to transfer the Property to the Buyer.

Dated: March 11, 2010
     New York, New York

**s/Arthur J. Gonzalez**
CHIEF UNITED STATES BANKRUPTCY JUDGE